United States Fidelity & Guaranty Company *v.* Hood.

[87 South. 115, No. 21478.]

1. INSURANCE. *Provision for autopsy construed against insurer; demand and autopsy must be made before interment; knowledge of local agent binding on insurer.*

The provision of an accident policy providing for an autopsy in case of death will be construed most strongly against the insurer and in favor of the insured; and such provision will be construed so as to require the demand and the operation to be made before interment. If the company desired to make an autopsy, it must arrange its affairs so as to secure the necessary information and make the demand and perform the operation before interment.

2. INSURANCE. *Provision for autopsy after burial is void as against public policy.*

A provision in an accident policy of insurance providing for an autopsy after the body has been buried is contrary to public policy and void.

3. WITNESSES. *Privilege respecting testimony of physician not waived by calling other physicians; testimony should not be received in absence of jury.*

Under section 3695, Code 1906 (Hemingway's Code, section 6380), a physician is incompetent to testify to facts which come to his knowledge by virtue of his being employed by his patient as a

physician, and the patient does not waive the privilege because he introduces another physician who testifies for the patient about the same facts. It is improper practice in such case to permit the physician to testify at all about such facts even in the absence of the jury. The proper practice is to ascertain whether the facts were learned because of the relation, and, if so, to exclude the evidence.

4. INSURANCE. *Accident is proximate cause of death resulting from accident accompanied by disease set in action by accident.*
   Where a provision of an accident insurance policy insures against "the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means," and an accident happens which sets in action a latent and inactive disease, and death results from the accident accompanied by the effects of such disease, the accident is the proximate cause of the death. To avoid the policy in case of an accident accompanied by disease, the disease must proximately contribute to the death.

On suggestion of error.  Suggestion of error overruled. For former decision, see 86 So. 814.

*Percy & Percy,* for appellant.

The provision in the policy covering the right of the company to have an autopsy performed is plain and unambiguous. The appellee seeks to avoid the forfeiture of her rights under the policy arising from a violation of this condition upon the sole ground that in order to avail itself of this right, the company must demand such autopsy prior to the burial of the deceased. We have been unable to find any case in the United States enunciating this novel doctrine. There are cases avoiding the condition for divers reasons therein set out. In *Root* v. *London Guaranty & Acc. Ins. Co.,* 72 N. E. 1150, where the company, on the day following assured's death the delay in making the application was held unreasonable. In *Johnson* v. *Banker's Mut. Cas. Co.,* 151 N. W. 413, where the demand for an autopsy was made less than three hours before that set for burial, the court held it was not made at a reason-

able time. In *Mass. Bonding & Ins. Co.* v. *Duncan*, 179 S. W. 472, it was held that a request to delay interment indefinitely does not avoid the policy for breach of the provision entitling the company to hold an autopsy, the request not being made for an autopsy but simply to delay the funeral. In *Crotly* v. *Continental Cas. Co.*, 146 S. W. 833, where the policy provided that the insurer might perform an autopsy on the body, the fact that one was performed before notice to the company and that part of the spinal column was lost was held not a defense to an action on the policy. 7 Cooley, 3450.

In *Mass. Bonding & Ins. Co.* v. *Duncan, supra,* the court laid stress upon the fact that no evidence was shown that an examination of the body would disclose anything material to the case. There are a number of cases holding that the right to examine assured does not carry with it the right to perform an autopsy. But in the instant case the right to demand an autopsy is specifically granted, and if the demand is properly made, its refusal defeats any right of action in the policy. *Johnson* v. *Banker's Mut. Cas. Co.*, 151 N. W. 143; *Granger's Life Ins. Co.* v. *Brown,* 57 Miss. 308; *Wehle* v. *U. S. Mutual Acci. Assn.*, 60 Am. St. Rep., 598.

Was death caused by accident within the terms of the policy. The provision in the policy covering the liability of the company is as follows: The Insurance Clause. (1) The effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through accidental means. In *Stanton* v. *Travelers Ins. Co.*, 78 Atl. 317, the court in construing a provision identical with the provision in the policy in this case, held it to be the consensus of opinion that if an injury and an existing bodily disease or infirmity concur and co-operate to produce death, no liability exists; that if death was not the result of accident alone, but was caused partly by the accident and partly by pre-existing bodily infirmity, there is no liability; that where assured died because the accident aggravated the effects of the dis-

ease or the disease aggravated the effects of the accident, death in such case would not be the result of accident alone, but would be caused partly by disease and partly by accident, the two acting concurrently, and no liability exists. *National Masonic Acc. Assn.* v. *Shyrock*, 73 Fed. 774; *Commercial Traveler's Mut. Acc. Assn.* v. *Fulton*, 79 Fed. 423; *Hubbard* v. *Mutual Acc. Assn.*, 98 Fed. 930; *White* v. *Standard Life & Acc. Ins. Co.*, 103 N. W. 735; *New Amsterdam Cas. Co.* v. *Shields*, 155 Fed. 54; *Ill. Com. Assn.* v. *Parks*, 179 Fed. 794; *Binders* v. *National Mas. Assn.*, 102 N. W. 190; *Tothman* v. *New Amsterdam Cas. Co.* (Mich.), 152 N. W. 983; *Maryland Cas. Co.* v. *Morrow*, 213 Fed. 599; *Crandall* v. *Continental Casualty Co.*, 179 Ill. App. 330; *Penn* v. *Standard Life & Acc. Ins. Co.*, 73 S. E. 99; *Aetna L. Ins. Co.* v. *Betherl*, 13 S. W. 523; *Penn* v. *Standard Life & Acc. Ins. Co.*, 73 S. E. 99.

The cases establish the principle that, if death results from disease or a bodily infirmity, there can be no recovery under such a policy, whether the insured suffered an accident or not and they also show that there can be no recovery if the insured sustained an accident, but at the time it happened was afflicted with a pre-existing disease, and if death would not have resulted if he had not had the disease, but his death was caused because the accident aggravated the effects of the disease or the disease aggravated the effects of the accident. *Aetna Life Ins. Co.* v. *Ryan*, 255 Fed. 483; *Collins* v. *Casualty Co.*, 224 Mass. 327, 112 N. E. 634; *Kellner* v. *Traveler's Ins. Co., Hartford, Conn.*, 181 Pac. 61; Cornelius on Accidental Means, page 100; *Penn* v. *Standard L. & Acc. Ins. Co.* (N. C.), 42 L. R. A. (N. S.) 593, 597; *Crandall* v. *Continental Cas. Co.* (Ill.), 179 Ill. App. 330; *Nat. Assn.* v. *Scott*, 155 Fed. 92; *Stanton* v. *Travelers' Ins. Co.* (Conn.), 34 L. R. A. (N. S.) 445; *Stull* v. *U. S. Health & Acci. Assn.* (Ky.), 115 S. W. 234; *Thomas* v. *Fidelity & C. Co.*, (Md.), 67 Atl. 259; *Ward* v. *Aetna L. Ins. Co.* (Neb.), 118 N. W. 70, 123 N. W. 456, *Continental Cas. Co.* v. *Peltier* (Va.), 51 S. E. 209; *Aetna*

*L. Ins. Co.* v. *Bethel,* (Ky.), 131 S. W. 523; *Reinheimer* v. *Aetna Life Ins. Co.* (Ohio), 83 N. E. 491.

Nor is the question, of proximate and immediate cause raised under the condition in the policy excluding injuries resulting solely from accidental means. *White* v. *Standard L. & Acc. Ins. Co.,* 103 N. W. 735, 884; *Carr* v. *Pac. Mutual Life Ins. Co.* (Mo.), 75 S. W. 180; *Penn* v *.Standard L. & A. Ins. Co.,* 42 L. R. A. (N. S.) 593; *Rathman* v. *New Amsterdam Cas. Co.* (Mich.), 152 N. W. 983.

Not only did the plaintiff fail to prove that death resulted through accidental means, but she affirmatively proved by her own witness that death was the result of the accident aggravating the pre-existing disease, and such pre-existing disease co-operating with the accident or the accident co-operating with such pre-existing disease, resulted in death. The burden is on the plaintiff to not only show that the assured suffered an accident, but that that accident was the sole cause of his death, and such death resulted from the accident independently of all other causes, and there can be no recovery unless the accident was the sole cause of his death independent of all other causes. *Aetna L. Ins. Co.* v. *Ryan,* 255 Fed. 483; *Stanton* v. *Travelers Ins. Co.,* 78 Atl. 317; *Ill. Com. Assn.* v. *Parks,* 179 Fed. 794, 800; *Nat. Masonic Acc. Assn.* v. *Shyrock,* 73 Fed. 774, 776; 1 Corpus Juris, 496; *National Assn.* v. *Scott,* 155 Fed. 92; *Commercial Travelers Mut. Acc. Assn.* v. *Fulton,* 79 Fed. 423; *Hubbard* v. *Mutual Acc. Asso.,* 98 Fed. 930; *Hubbard* v. *Traveler's Ins. Co.,* 98 Fed. 932; *Binder* v., *National Masonic Acc. Asso.* (Iowa), 102 N. W. 190; *White* v. *Standard Life & Acc. Ins. Co.* (Minn.), 103 N. W. 735; *Aetna Life Ins. Co.* v. *Dorney* (Ohio), 67 N. E. 254; *Penn* v. *Standard Life & Acc. Co.* (N. C.), 73 S. E. 99; 76 S. E. 262; *Maryland Casualty Co.* v. *Glass* (Texas), 67 S. W. 1062; *Rathman* v. *New Amsterdam Casualty Co.* (Mich.), 152 N. W. 983.

There is a line of authorities holding that an insurance company is liable, if at the time of the accident the insured was afflicted with a latent or dormant disease which

was affected by the injury and excited and aroused to rapid growth and assured would not have died when and as he did if the accident had not occurred, then the company is liable, such death being a death from accident. Such is the holding in. *Fidelity & C. Co.* v. *Meyers* (Ark.), 152 S. W. 995; *Fetter* v. *Fidelity & C. Co.* (Mo.), 73 S. W. 592; *Moon* v. *Order of U. C. Travellers* (Neb.), 146 N. W. 1037.

But we submit the courts laying down this doctrine are in the minority, the vast majority of the courts of the United States following the general rule as hereinbefore set out.

Error in excluding the testimony of Dr. J. D. Smythe. In the case of *Y. & M. V. R. R. Co.* v. *Messina,* 109 Miss. 143, the court in construing section 3695 of the Code of 1906, held that all communications received by a physician in attendance on his patient were privileged, and even though the matter to be testified to by the physician was made the basis if a claim for damages, that such suit did not amount to a waiver of the privilege; at least this is the effect of the decision. With all due respects to the court, bringing of an action in which an essential part of the issue is the existence of physical ailment should be a waiver of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should not be disclosed to the world at large; hence the bringing of a suit in which the very declaration and much more, the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclose does not exist. If the privilege means anything at all in its origin, it means this as a sequel. 4 Wigmore on evidence, sec. 2389.

We do not rely upon an overruling of the doctrine in the Messina case to support our contention that the lower court erred in excluding Dr. Smythe's testimony for our court has limited and restricted the doctrine in the Messina case beyond the instant case. In the case of *Sov-*

*ereign Camp, etc.* v. *Farmer,* 77 So. 655, our court held that the privilege could be waived either before or at the trial. And in *Hamel* v. *So. Ry. Co.* 74 So. 276, the court said, in holding that an objection to the testimony of a physician should have been sustained, though the plaintiff placed another physician on the stand in rebuttal, counsel for the appellee contending that the privileged communication under the statute was waived by the appellant because the appellant introduced a physician as a witness in rebuttal.

This contention is unsound, for the reason that the introduction of the testimony by the appellant in rebuttal could, in no way, cure the error and wrong that had been committed in the first instance by the appellee railroad in introducing the attending physician of the deceased at a time when the appellee had introduced no attending physician's testimony whatever as to the cause of death, and had not therefore, in any way opened the door to inquiry as to the injury and cause of death of deceased by testimony of any attending physician.

Thus indicating most strongly that if in proving her case the plaintiff had introduced a physician first and he had testified on the particular subject of the cause of death, that the door would be hereby opened to a full inquiry on that particular subject put in issue by the testimony of her physician. But beyond this, here is a single examination conducted by two physicians, both called in by the plaintiff, one of whom is permitted to testify for her as to the result of that examination, and because the testimony of the second physician is unfavorable to the plaintiff, she objects to it and the court excludes it. To so hold makes an absurdity of the law and brings into contempt the statute. *Morris* v. *Railroad Co.,* 42 N. E. 410.

Summary. In conclusion we submit that the court below erred: (1) In its ruling upon the pleadings and in giving instruction one for the plaintiff and refusing instructions Nos. one and two for the defendant. The substance of these rulings is that, notwithstanding the language of the contract between the parties, no autopsy will

be permitted after burial; there can be no exhumation. for the purpose of an autopsy; (2)   in holding that, even though the fall merely aggravated the previous disease and such disease alone, or in co-operation with the fall, produced death, if such fall was accidental, the company was liable; and (3)   in excluding the testimony of Dr. J. D. Smythe and in excluding the three physicians' statements.

We submit that the judgment should be reversed, and respectfully ask this court to render judgment for appellant, inasmuch as the appellee under the undisputed evidence is not entitled to recover and the peremptory instruction should have been granted in favor of appellant. Section 4919, Miss. Code of 1906; *Y. & M. V. R. R. Co.* v. *Pope,* 104 Miss. 339.

*Jos. A. McCullough,* for appellant.

It is apparent that the court by giving plaintiff instructions No. 4 and refusing defendant's instructions Nos. 3, 4 and 5, was of the opinion that if the death of Mr. Hood was caused primarily by the accidental injury, notwithstanding pre-existing disease, combined and concurred, there should be a verdict for the plaintiff. We insist that this was error.   The contract itself insures against effects resulting directly and exclusively of all other causes from bodily injures sustained solely through accidental means.   *National Masonic Acc. Ass'n* v. *Shyrock,* 73 Fed. 774, 775, 20 C. C. A. 3; *Commercial Trav. Mut. Acc. Ass'n.* v. *Fulton,* 79 Fed. 423, 426, 430, 42 C. C. A. 654; *Sharp* v. *Commercial Trav. Mutual Acc. Ass'n,* 139 Ind. 92, 93, 95, 37 N. E. 353; *Binder* v. *National Masonic Acc. Ass'n,* 127 Iowa, 25, 102 N. W. 190, 194; *White* v. *Standard Life & Acc. Ins. Co.,* 95 Minn. 77, 103 N. W. 735, 736, 884; *Crandall* v. *Continental Casualty Co.,* 179 Ill. App. 330; *Penn* v. *Standard Life & Accident Co.,* 158 N. C. 29, 73 S. E. 99; on rehearing, 76 S. E. 262; See, also, *Reinheimer* v. *Aetna Life Insurance Co. of Ohio,* 77 Ohio State 360, 83

N. E. 491; *Clark* v. *New Amsterdam Casualty Company,
Supreme Court of California,* 179 Pac. 195; *Maryland
Casualty Co.* v. *Morrow,* 213 Fed. 599, 130 C. C. A. 179, 52
L. R. A. (N. S.) 1213; *Stanton* v. *Insurance Co.,* 24 L. R.
A. (N. S.) 445; *Aetna Life Ins. Co. of Hartford Conn.* v.
*Ryan, Circuit Court of Appeals, Second Circuit,* 255 Fed.
483; *National Masonic Accident Association* v. *Shyrock,*
73 Fed. 774, 20 C. C. A. 3; *Maryland Casualty Company*
v. *Morrow,* 213 Fed. 599, 130 C. C. A. 179, 52 L. R. A. (N.
S.) 1213; *Preferred Accident Ins. Co.* v. *Patterson,* 213
Fed. 595, 130 C. C. A. 175; *Illinois Commercial Man's
Ass'n* v. *Parks,* 179 Fed. 794, 103 C. C. A. 286; *Stanton*
v. *Traveler's Ins. Co.,* 83 Conn. 708, 78 Atl. 317, 34 L. R.
A. (N. S.) 445; *Stokely* v. *F. & C.,* 193 Ala. 90, 69 So. 64,
L. R. A. 1915E. 995; *Pacific Mutual Life Ins. Co.* v. *Despain,* 77 Kan. 654, 95 Pa. 580; *Aetna Life Ins. Co.* v. *Bethel,*
140 Ky. 609, 131 S. W. 523; 103 N. W. 735, 884, 5 Ann.
Cas. 83; *Thomas* v. *Fidelity & Casualty Co.,* 160 Md. 229,
67 Atl. 259; *Robinson* v. *U. S. G. & A.,* 192 Ill. App. 475;
*Continental Casualty Co.* v. *Peltier,* 104 Va. 222, 51 S. E.
209; *Jiroch* v. *Travelers Ins. Co.,* 145 Mich. 375, 108 N. W.
728; *Ward* v. *Aetna Life Ins. Co.,* 85 Neb. 471, 123 N. W.
456; *Penn* v. *Standard Life & Accident Ins. Co.,* 158 N. C.
29, 73 S. E. 99, 42 L. R. A .(N. S.) 593; *Amsterdam Casualty Company* v. *Shields, Circuit Court of Appeals, Sixth
Circuit,* 155 Fed. 54; *Western Commercial Travelers Ass'n*
v. *Smith* (C. C. A. Eighth Circuit), 85 Fed. 401; *Bacon* v.
*Association,* 123 N. W. 304, 25 N. E. 399; *Sinclair* v. *Assurance Co.,* 3 Ed. 478; *Dozier* v. *Casualty Co.,* 46 Fed.
446; *Insurance Co.* v. *Melick,* 27 U. S. App. 547, 560, 561,
12 C. C. A. 544, 552, and 65 Fed. 178, 186; *Railway Co.*
v. *Callaghan,* 12 U. S. App. 541, 550, 6 C. C. Z. 205, 210,
and 56 Fed. 988, 994; *Railway Co.* v. *Kellog,* 94 U. S. 469,
475; *Association* v. *Shyrock,* 36 U. S. App. 658, 663, 20 C.
C. A. 3, 5, 73 Fed. 774, 776; *Aetna Life Insurance Co.* v.
*Wicker,* (C. C. A., Second Circuit), 240 Fed. 398; *Leland*
v. *Order of United Commercial Travelers America* (Mass.),
124 N. E. 517; *Western Indemnity Co.* v. *MacKachnie*

*Court of Civil Appeals of Texas,* 214 S. W. 456; *Kellner*
v. *Travelers Ins. Co., Hartford, Conn., Supreme Court of
California,* 191 Pac. 61; *Crandall* v. *Continental Casualty
Co.,* 179 Ill. App. 330; *Koprivica* v. *Standard Accident
Ins. Co.,* 218 S. W. Rep. 689, 55 Law Journal, page 507.

As to Autopsy. In this case the company had the right
to demand an autopsy and an opportunity to examine the
body of the assured. It acted with reasonable promptness
and upon a proper occasion, and the failure of the bene-
ficiary to permit such autopsy and examination was fatal
to the plaintiff's right to recover. *American Employer's
Liability Ins. Co.* v. *Barr* (Circuit Court of Appeals, Eighth
Circuit), 68 Fed. 873; *Johnson* v. *Bankers Mutual Cas.
Company* (Minn.), L. R. A. 1915D, page 1199 and note;
*Ewing* v. *Commercial Travelers' Asso.,* 66 N. Y. Supple-
ment 1056, 63 N. E. 1116; *Suddath* v. *Travelers,* 106 Fed.
822; Briefs on Law of Insurance, 7 Cooley, supplement
3450; *Whitehouse* v. *Travelers' Ins. Co.,* Fed. Cas. No.
17566; *Grangers Life Insurance Co.* v. *Brown,* 57 Miss.
308, 34 American Report 446; *Paul* v. *Insurance Co.,* 112
N. Y. 472, 20 N. E. 347.

It seems to us that reasonable minds cannot draw dif-
ferent inferences from the undisputed facts in this case,
bearing upon the conduct of the company in exercising its
legal right to demand autopsy.


*R. B. Campbell,* for appellee.


The assignment of errors involves three questions: 1.
whether the right, conferred by the policy, to make an
autopsy included the right to exhume the body, for the
purpose; and further, if it conferred that right, whether
the demand for the autopsy was so delayed as to preclude
the appellant from relying upon its refusal as a bar to
recovery on the policy.

2. Whether, in case of death, there is liability on the
policy, which insures against the effect resulting directly
and exclusively of all other causes, from bodily injury sus-

tained solely through accidental means, if such injury be the proximate, predominant or efficient cause of the death although disease or bodily infirmity contributed thereto.

3. Whether the court erred in sustaining the objection to Dr. J. D. Smythe's testifying, as a witness in the case.

My contention is: First, that this provision of the policy, giving the right to make an autopsy, in case of death, does not carry with it the right of exhumation; and second, that if it does carry that right, the demand for the autopsy was unreasonably delayed, in consequence of which its refusal constituted no bar to a recovery.

My research has failed to discover any case wherein the question, whether the right to make an autopsy, conferred by a policy, carries with it the right to exhume the body, for the purpose, has been expressly decided; but the language of the courts, in such cases as have arisen, strongly indicates that a provision giving the right to make an autopsy, does not carry with it the right of exhumation. Note to *Johnson* v. *Bankers' Mutual Casualty Ins. Co.*, 1916A, 156; *Whele* v. *U. S. Mutual Acc. Ass'n*, 60 Am. St. Rep. 598; *Suddath* v. *Travelers Ins. Co.*, 106 Fed. 822; *Patterson* v. *Ocean Acc. etc., Corp.*, 25 App. Cas. (D. C.) 46; *Ewing* v. *Commercial Travelers' Mutual Acc. Assn*, 55 App. Div. 241; 5 Joyce on the Law of Insurance (2 Ed.), sec 3491; 13 Cyc. 267, 12 Cyc., pages 267, 271, and 276.

Furthermore, in support of my contention that the provision of the policy, giving the right to make an autopsy must be construed as applying only so long as the body remains unburied, and that it does not confer the right to exhume the body, for the purpose, I refer the court to section 1102, Code of 1906, which makes it a felony for any person to open the grave or other place of interment with intent to move the body of any human being, for the purpose of dissection.

A contract conferring the right in violation of that statute would be illegal. If, however, it be held that, notwithstanding our statute cited, and the reasons which I

have already assigned, that the provision in question, giving the right to make an autopsy, carries with it the right to disinter, or exhume, the body for the purpose, then I further submit, that the demand for the autopsy was not made within such reasonable time as entitled the appellant to rely upon appellee's refusal of the demand in bar of her recovery. *Wehle* v. *U. S. Mutual Acc. Assn, ubi supra,* the court said: as to whether death resulted from bodily injury within the meaning of the policy.

"The policy insures against the effects resulting directly and exclusively of all other causes, from bodily injury sustained solely through accidental means." Appellant does not deny that the assured sustained bodily injury solely through accidental means; but contends that disease contributed to his death and that consequently his death did not result exclusively of all other causes, from the injury.

My contention is that, even though disease may have contributed to, or accelerated his death if the injury was the proximate, predominant or efficient cause of his death the insurer was liable on the policy. In other words, the clause, exclusively of all other clauses, should not be construed literally but as meaning exclusively of all proximate, predominant or efficient causes, otherwise it would be hard to imagine a case in which the insurer would be liable; for, if construed literally, and old age or bodily infirmity, unaffected by any specific disease, should contribute to assured's death, there would be no liability since death would not have resulted, exclusively of all other causes, from the injury and only the young and vigorous could hope to recover on such a policy. Surely, such was not the intention of the parties in the instant case. Note to *Stanton* v. *Travelers Insurance Co.,* 34 L. R. A. (N. S.) p. 445; and note to *Rathman* v. *New Amsterdam Casualty Co.,* Ann. Cas. 1917 C. P. 463; *National Masonic Acc. Assn.* v. *Shryock,* 73 Fed. 774; *Patterson* v. *Ocean Acc. etc., Corp.,* 25 App. D. C. 46; *Manufacturers Acc. Indem-*

*nity Co.* v. *Dorgan,* 58 Fed. 945; *Hall* v. *General Accident Assurance Corporation,* 85 S. E. 600.

The following cases establish the doctrine that there is liability on a policy, which insures against death resulting directly and exclusively of all other causes from bodily injury, where such injury is the proximate, predominant or efficient cause, of the death, and controlled the court below in giving instructions No. 2 and 4 for appellee, and in refusing instructions No. 3, and 5, asked for by the appellant. *Freeman* v. *Mercantile Mutual Accident Assn.,* 17 L. R. A. 753; *Fetter* v. *Fidelity & Casualty Co.,* 97 Am. St. R. 560, S. C., 174 Mo. 256; *Fidelity & Casualty Company* v. *Meyer,* 106 Ark. 91; *Moon* v. *Order of United Commercial Trav. of America,* 96 Neb. 65; *Hall* v. *General Accident Assur. Corp.,* 85 S. E. 600; *Thornton* v. *Travelers Ins. Co.,* 116 Ga. 129; *Continental Casualty Co.* v. *Lloyd,* 165 Ind. 52; *Driskell* v. *United States Health & Acc. Ins. Co.,* 117 Mo. App. 362; *Bohaker* v. *Travelers Ins. Co.,* 215 Mass. 32.

As to the action of the court in not permitting Dr. J. D. Smythe to testify as a witness for defendant. Dr. Smythe was called on by the assured to examine him as a physician; and, as such he saw the assured once after the injury and whatever communication was made to him, or information derived, during the course of his examination, was privileged and could not be disclosed in this proceeding except at the instance of the assured. Code 1906, section 3695; *Yazoo & Mississippi R. R. Co.* v. *Messina,* 109 Miss. 143; *Hamel* v. *Southern Ry. Co.,* 113 Miss. 344.

And while, as was held in *Woodmen of the World* v. *Farmer,* 116 Miss. 626, the privilege is personal to the physician's patent and may be waived by the patient, either before or at the trial, it doesn't follow that, after the patient's death the privilege can be waived by any one else, since, under the statute, a disclosure of the privilege communications cannot be made except at the instance of the patient.

Oct., 1920]   U. S. Fid. & Guar. Co. v. Hood.                561

124 Miss.]              Opinion of the Court.

Be that as it may, the fact that Dr. Gamble, the assured's physician, who was constantly at the bedside of the assured up to the time of his death, was called by appellee as a witness; and testified in the case, was not a waiver of the privilege so as to authorize the admission of Dr. Smythe's testimony.

In *Newton Oil Mill* v. *Spencer*, 116 Miss. 568, the plaintiff introduced Dr. Monroe as a witness in his behalf, and the defendant offered to introduce Dr. Cooper, and plaintiff objected to his testifying, and the court sustained the objection, which was affirmed by the supreme court, upon the rule announced in the *Messina case, ubi, supra, ita lex scripta.*

So, while the line of argument pursued in the brief for appellant, might do very well, if addressed to the legislature, it should have no force as an argument to the court.

ETHRIDGE, J., delivered the opinion of the court.

The judgment in this case was affirmed on a former day without written opinion.  86 So. 814.  A suggestion of error has been filed in which we are asked to write our views if we should adhere to the former opinion, but earnestly insisting that we erred in the decision heretofore rendered.

The appellee was the plaintiff below and the appellant the defendant.  The appellant issued an accident policy to Clifton R. Hood, the husband of the appellee, in which policy the appellee was named as a beneficiary.  The policy agreed to pay her, in the event of his death within the terms of the policy, ten thousand dollars, called the principal sum, and five thousand dollars by virtue of what is termed an "accumulation indorsement" attached to the policy.

The policy was first issued March 12, 1915, and was renewed from time to time, and was in force at the time of the death of Clifton R. Hood.

The insurance was against "the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means."

Under the heading "General Agreements," the policy contains various paragraphs, of which it is only necessary to mention here paragraphs 3 and 8, paragraph 3 being as follows.

"(3)    The company shall in case of injury or disability have the right and opportunity to examine the person of the assured or beneficiary when and as often as it requires, and shall also have the right and opportunity to make an autopsy in case of death."

Paragraph 8, so far as necessary to state is as follows:

"(8)    Compliance with all of the terms and conditions of this policy shall be a condition precedent to the recovery of any claim hereunder."

The assured was fifty-six years of age, and, while walking in his yard on December 12, 1917, during the life of the policy, he slipped down, striking the back of his head on the frozen ground, which was heavily covered with ice. He was carried into his house, and put in bed, where he remained until December 19, 1917, when he was removed to the King's Daughters' Hospital, in Greenville, Miss., and there died on the morning of December 27, and was buried in the afternoon of December 28, 1917.

Notice of the accident and of the death of the assured and proof of the injury and loss were furnished by the appellee to the appellant within the time and as required by the policy.

The appellant denied liability and refused to pay the amount claimed, and suit was brought to recover the amount due.

The appellant pleaded the general issue and a special plea to the declaration; contended under the general issue that the assured's death was not the direct and exclusive result of his accidental fall, but that disease, existing at the time, was the sole or a contributing cause thereof,

and, by said special plea, set forth the above paragraphs relating to the matter of autopsy, and then averred:

"That, upon being advised of the death of the assured, defendant demanded the opportunity to make an autopsy on the body of the said assured, Clifton R. Hood, and, under said paragraph 3, defendant was entitled to the right and opportunity to make an autopsy on said body; and the plaintiff refused to this defendant the opportunity to make such an autopsy, and refused to permit such autopsy, which was a violation of paragraph 3 of said policy, and under the provision of paragraph 8, by reason of such failure and refusal to comply with the terms and conditions of the policy, plaintiff is not entitled to recover."

To which special plea a replication was filed by the plaintiff, admitting the provisions of the policy set forth in the special plea, and then averred:

"That the demand for such autopsy was not made by defendant at or within a reasonable time after having been advised of the injury and resultant death of said assured, in that said defendant delayed making said demand until five or six days after the body of said assured had been buried."

To which replication the appellant interposed a demurrer, which the appellee asked the court to extend to the said special plea of the defendant, which the court did, sustained the demurrer to the special plea, and ordered the appellant to plead over to the declaration.

Thereupon, by leave of court, the appellant filed a second and third special plea, pleading in each a demand for an autopsy and its refusal in bar of the suit.

The appellee joined issue upon the second special plea, and interposed a demurrer to the third special plea, which demurrer was sustained.

The second special plea showed that the demand for an autopsy was made after the burial of the deceased, and alleged that the request to perform an autopsy was made by the defendant immediately upon being advised of the

death of the assured, and that the defendant was also advised that the death of the deceased was due to pre-existing disease and was not within the terms of its policy, death not having resulted directly and exclusively of all other causes from bodily injuries sustained solely from accidental means, and that an autopsy of the body would reveal this fact.

On the trial it appeared from the evidence of Dr. Gamble, a physician who attended the deceased, that the deceased was affected with high blood pressure and some kidney trouble; that Dr. Gamble had examined the deceased a few days before the accident, and that his condition was better than it had been for some years, and that, if the accident had not occurred, the deceased would probably have lived for a number of years; that the accident operated upon the diseased condition, but that the accident was the primary cause of his death, his death being caused by the fall accompanied by uremia. The deceased when injured was carried into his home and suffered great pain in his head, and was suffering when first attended by Dr. Gamble the following morning, and continued to suffer more or less until his death. After the injury and after the removal of the deceased to the hospital at Greenville, Miss., he gradually passed into a comatose state.

Dr. Lewis, a physician, also attended the deceased, and his opinion was that the death was caused by the fall and uremia.

Dr. Smythe, another physician, was also called to attend the deceased, but he was not introduced by the attorney for the appellee, but was placed on the stand by the appellant, and, in the absence of the jury, testified that he made one examination and one visit to the deceased, that in his opinion the condition of high blood pressure and the kidney trouble produced the death, and that he could not see that the fall had anything to do with it. This evidence was excluded and did not go to the jury.

Dr. McMahon, who was present in the courtroom as an expert pathologist for the appellant company, and heard

the evidence of the physicians, was asked the following question:

"Q. You have heard the testimony of Dr. Gamble in regard to the history of the case of Mr. C. R. Hood and the symptoms of the case. From what you have heard, are you able to form an opinion as to the cause of the death? A. I think I am. Q. What is your opinion? A. After hearing the testimony of these doctors I should be of the opinion that this gentleman died from uremia, from arteriosclerosis, chronic interstitial nephritis, and perhaps organic heart disease. Q. Would you say that. the fall which he had brought about, accelerated, or had any effect upon the case? A. That would be a very hard question to answer, but in the light of the evidence of this high blood pressure, and the fact that he lived some fourteen days following the accident, I should say in all probability it did not have any effect."

At the conclusion of the evidence the appellant company requested a peremptory instruction, which was refused.

Certain instructions hereafter referred to were given to the appellee and excepted to, and certain instructions were refused to the appellant, and exception taken to such refusals.

There was a verdict and judgment for the appellee, Mrs. Hood, from which this appeal is taken, and the following assignments of error are assigned:

"(1)   The court erred in overruling the demurrer filed by defendant to the plaintiff's replication.

"(2)   The court erred in applying the demurrer which was overruled, and which was filed to the plaintiff's replication, to the special plea filed by defendant.

"(3)   The court erred in sustaining the demurrer of plaintiff to defendant's third special plea.

"(4)   The court erred in sustaining the objection to the introduction of the testimony of J. D. Smythe, and in refusing to permit such testimony to go to the jury.

"(5)   The court erred in granting each and every instruction given for the plaintiff.

"(6)   The court erred in refusing each and every instruction requested by the defendant and refused by the court.

"(7)   The court erred in overruling the motion for a new trial and in refusing to set aside the verdict of the jury and the judgment rendered thereon and to grant the defendants a new trial."

The first three assignments relate to the ruling of the court on the demurrers and present for consideration the question whether or not the defendant had a right to an autopsy after the burial of the deceased.

The appellant has its principal office in Baltimore, Md., and has an agency at Memphis, Tenn., and an agent in Washington county, Miss.   Under its rules it reserved to its home office the right to demand an autopsy;  it being contended that neither the agent at Memphis, Tenn., or the agent in Washington county, Miss., had any right to demand or waive an autopsy.   When the accident occurred the agent at Greenville, Miss., reported to the Memphis office.   On the day preceding the death of deceased the agent reported to the Memphis office that the accident was much more serious than was first thought, and he reported the death to the Memphis office on the day that the deceased died, and on the following day sent a copy of the notice in the paper containing an account of the funeral arrangements.

The burial was on the 28th day of December, and on the 2d day of January the appellant company sent an adjuster to report upon the death.   This adjuster conferred with the physicians and the undertakers, and obtained statements from them which he reported to the Memphis office, which office notified the home office on the 2d day of January and requested authority to demand an autopsy, which request was granted by the home office, and the request communicated to the appellee, who advised the agent of the company that her brother would be there the

next day, and she wished to consult him.  On January 3d the company sent a physician to conduct the autopsy, and this physician requested ·permission to make the autopsy, and was advised that a family council would be held the following day.  The physician returned home without having any other communication with the appellee or her family.  On the 5th day of January the company wrote Mrs. Hood making a request for an autopsy, which on the 8th day of January she refused because the demand was made too late.

It will be seen from the above that no demand was made for an autopsy until after the burial, but the appellant insists that under its contract it had the right to make an autopsy, even though it required exhuming the body to do so.

There are a number of authorities which on their facts have held that the request for an autopsy came too late, but none of the authorities cited have passed specifically upon the question as to whether a demand for an autopsy after interment and its refusal would constitute a defense to the ·policy.  The general trend of the authorities is to the effect that the demand must be seasonably made.  It is insisted here-that the company had no notice of the necessity for an autopsy or the probable results that might follow an autopsy until after the interment, and that the right was not waived because the facts were not communicated to the company by the beneficiary until after the interment was made, and that it made the request seasonably after securing the information that an autopsy would probably show the nonliability of the company under the policy.

The company may, of course, confide to such of its officers as it may desire the sole power of making a demand for an autopsy in such cases, and may refuse the local agents any authority to either demand an autopsy or to waive the benefits.  But where it does so it is nevertheless bound by knowledge coming to the knowledge of its agent and must exercise such reasonable diligence as the circum-

568        U. S. Fid. & Guar. Co. *v.* Hood.        [Sup. Ct.

Opinion of the Court.        [124 Miss.

stances call for.   In the present case it was advised of the
seriousness of the injury prior to the death of the deceased,
and knowledge of his death came to its agents in ample
time, if promptly communicated, for it to have made the
demand.

Provisions of the contract of this kind which are pre-
pared by the insurer are to be construed most strongly
against the insurer and in favor of the insured.   Where
there is no provision in the contract itself giving the right
of an autopsy after interment, the court will construe the
provisions to mean that an autopsy must be demanded and
performed prior to interment, and, if the insurer desires
to avail itself of this privilege, it must so arrange and pro-
vide for information to be given of the death prior to the
interment.

From a consideration of all the facts in the present case
we think, if the company had required its agents to re-
port information to it, it could have learned all needed
facts for the determination of its right to an autopsy be-
fore burial.   If, however, this be not a correct view or
consideration of the clause above set out, and if the clause
is to be construed so as to mean that the insurer should
have the right to exhume the body, then we think such con-
tract would be in violation of public policy and would
render it void.

Section 1100, Code of 1906 (Hemingway's Code, section
826), makes it a felony for any purpose to remove a dead
body of any human being from the grave or place of in-
terment for the purpose of selling the same or for mere
wantonness, and prescribes a punishment.

Section 1101, Code of 1906 (Hemingway's Code, section
827), prohibits any person from receiving or purchasing
such body, knowing the same to have been disinterred con-
trary to the last section, and prescribes the punishment.

Section 1102, Code of 1906 (Hemingway's Code, section
828), provides that every person who shall open a grave
or other place of interment with the intent to remove the
dead body of any human being for the purpose of selling

the same, or for the purpose of dissection, or .to steal the coffin or any part thereof, or the fastenings or other articles interred with the dead body, or any of them, shall be punished, etc.

While the act of removing the body from the grave for the purpose of an autopsy under a contract of the character of the one here involved would not come within the literal meaning and purpose of the statute so as to make it a felony, still we think the statute establishes a settled purpose on the part of the public to protect the repose of the dead and to protect the living from the violation of the sensibilities and sentiments that cluster round the dead. There is no statute giving any person any right to disinter the dead body for this purpose. At common law it was a misdemeanor to disinter a dead body which had been buried, and even a disinterment for laudable motives was not a defense.

In 13 Cyc. at page 271, we find the following; "Except in cases of necessity or for laudable purposes, the policy of the law is that the sanctity of the grave should be maintained, and that a body once suitably buried should remain undisturbed,"—citing numerous authorities in note 18, from which note we quote the following: "A proper appreciation of the duty we owe to the dead, and a due regard for the feelings of their friends who survive, and the promotion of the public health and welfare, all require that the bodies of the dead should not be exhumed, except under circumstances of extreme exigency."

At page 276 of 13 Cyc. we find the following statement: "It may be stated as the universal rule of law in civilized countries that it is an indictable offense to disinter and remove dead bodies wantonly or for the sake of gain, and by the old common law even the fact that the motive of the person removing the body is laudable is no defense. In most of the states of the Union the violation of sepulture is made a specific offense by statute. But these statutes are not directed against and do not apply to exhumations made by public officials, with a view to ascertaining

570        U. S. Fid. & Guar. Co. v. Hood.      [Sup. Ct.

Opinion of the Court.        [124 Miss.

whether a crime has been committed; nor do they apply to a person who having obtained the necessary permit from the constituted authorities removes the dead body of a relative or friend for reinterment."

The beneficiary in a life insurance policy is not the only person that has an interest in having the repose of the dead respected and held sacred. It is shocking to the senses to conceive of one person or one or more persons contracting so as to provide for the exhumation and mutilation of dead bodies. We think to hold that such rights may be established by contract is carrying commercialism to unwarranted extremes.

It is next assigned for error that the court erred in sustaining the objection to the introduction of the testimony of Dr. J. D. Smythe and in refusing to permit such evidence to go to the jury.

Section 3695, Code of 1906 (Hemingway's Code, section 6380), reads as follows:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

In the case of *Railroad* v. *Messina*, 109 Miss. 143, 67 So. 963, this court held that the evidence of a physician as to knowledge gained by reason of his employment as such could not be disclosed without the consent of the patient; that the privilege was for the benefit of the patient, and not of the physician.

In *Newton Oil Mill* v. *Spencer*, 116 Miss. 568, 77 So. 605, this court held that a physician who had attended the party injured as his physician, though he was employed and paid by the company, could not testify, although the plaintiff had introduced another physician who testified as to the extent of his injuries. In this case the point was directly involved as to whether the plaintiff, Spencer, waived his privilege by placing a physician on

the stand to testify relative to his injury about which the suit was instituted, and we treated the principle as being settled by the *Messina Case, supra,* and did not enlarge upon the law in announcing our conclusions, but the point was directly involved and pressed upon us in that case. There is no conflict between the *Spencer Case, supra,* and any other case in this state. In the case of *Hamel* v. *Railway Co.,* 113 Miss. 344, 74 So. 276, Division A of this court expressly reserved the decision of the point. In the *Spencer Case, supra,* we expressly decided the point.

In attacking these decisions the appellant says: "The bringing of an action in which the essential part of the issue is the existence of physical ailment should be a waiver of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist."

We do not agree with counsel that this is the whole reason for the enactment of the statute. One of the reasons that may have prompted the legislature in the enactment of the statute was the evil of commercializing knowledge so obtained by certain experts, so called, and by physicians employed by one party to wait upon and minister to parties which such employer had injured. But, whatever may have been the reason for the enactment of the statute, the statute expressly prohibits a physician from testifying without the consent of the patient. The evidence of a physician ought not to be received before the court, and it is error for the court to proceed upon the idea that the judge and the public may hear the statement of the physician in such case, though it be excluded from the jury. In such case the question ought to be directed to ascertaining whether the physician has knowledge by

572          U. S. Fid. & Guar. Co. *v.* Hood.     [Sup. Ct.

Opinion of the Court.                    [124 Miss.

reason of the relation of physician and patient, and, if it was so acquired, it ought to be excluded.

It is next insisted that the injury was not caused directly and exclusively of all other causes from bodily injuries sustained during the life of the policy solely through accidental means.

It appears clearly from the testimony of Dr. Gamble that the active cause of the death was the accident and that the accident precipitated the other troubles; that, had the accident not occurred, death would not have resulted for some years.

Does the provision of the policy "the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means" mean that there can be no recovery if there is a latent or dormant disease which becomes active through the agency of the accident, and co-operates with the other effects of the accident in bringing about death?

We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy.

In *Patterson* v. *Ocean Accident & Guarantee Corporation,* 25 App. D. C. 46, the rule is stated in one of the headnotes as to proximate cause as follows:

"What is the proximate cause of an injury is generally a question for the jury, to be determined as a fact in view of all the circumstances of fact attending it; . . . and where, in an action on an accident insurance policy, the evidence tending to show that the death of the decedent was the immediate result of an accident is weak, but it cannot be said that all reasonable men would necessarily conclude that it was not the result of the accident, the case is one for the jury."

And it is also stated: "The rule of interpretation of contracts of insurance of all kinds is that, in cases of doubt, that interpretation shall be given which favors the insured rather than the insurer; and this rule has its strongest application in relation to those terms of the policy that would work the forfeiture of a right otherwise maintainable."

In that case the clause involved read as follows: "By the first of these the insurance is expressly stated to be, 'against the accidental bodily injuries caused solely . . . by external, violent and visible means which shall, independent of all other causes, disable the assured.'

"That a strain received in the ordinary course of the assured's business, if received at all, is an accident within the contemplation of the policy, we can have no doubt. *United States Mut. Acc. Ass'n* v. *Barry,* 131 U. S. 100, 121, 33 L. Ed. 60, 67, 9 Sup. Ct. Rep. 755.

"The universal rule of interpretation of contracts of insurance of all kinds is that, in cases of doubt, that interpretation shall be given which favors the insured rather than the insurer. The particular words quoted would seem to have been intended particularly to apply to a case of disability for which the assured might claim the indemnity stipulated in the policy. But, assuming that they were expressly intended to apply to the death indemnity clause, and be read in connection with the words therein providing that death shall result from accidental bodily injuries as the 'actual and direct cause thereof,' we think they cannot be regarded as clearly meaning that there shall be no recovery in a case where there was a pre-existing diseased condition of the body—a predisposing cause of death, as it has been called—notwithstanding the accidental injury may have been the exciting, efficient, predominant cause.

"Their meaning, considering them together or separately, is, in our opinion, that the intervening accident must be the proximate, direct cause of death, and nothing more. This conclusion is supported by the following authorities:

574     U. S. Fid. & Guar. Co. *v.* Hood.    [Sup. Ct.

Opinion of the Court.          [124 Miss.

*Fetter* v. *Fidelity & C. Co.,* 174 Mo. 256, 61 L. R. A. 459, 97 Am. St. Rep. 560, 73 S. W. 592; *Horsefall* v. *Pacific Mut. L. Ins. Co.,* 132 Wash. 132, 63 L. R. A. 425, 98 Am. St. Rep. 846, 72 Pac. 1028; *Modern Woodman Acci. Asso.* v. *Shryock,* 54 Neb. 250, 39 L. R. A. 826, 74 N. W. 607; *Freeman* v. *Mercantile Mut. Acc. Ass'n,* 156 Mass. 351, 353, 17 L. R. A. 753, 30 N. E. 1013. See, also, *Winspear* v. *Accident Ins. Co.,* L. R. 6 Q. B. Div. 42, 45; *Travelers' Ins. Co.* v. *Murray,* 16 Colo. 296, 25 Am. St. Rep. 267, 26 Pac. 774; *Atlanta Acci. Asso.* v. *Alexander,* 104 Ga. 709, 42 L. R. A. 188, 30 S. E. 939; *Omberg* v. *United States Mut. Acc. Ass'n,* 101 Ky. 303, 72 Am. St. Rep. 413, 40 S. W. 909.

"The doctrine is well expressed by the supreme judicial court of Massachusetts in *Freeman* v. *Mercantile Mut. Acc. Ass'n,* 156 Mass. 351, 17 L. R. A. 753, 30 N. E. 1013, in the following words: 'The law will not go farther back in the line of causation than to find the active, efficient, procuring cause of which the event under consideration in the natural and probable consequence, in view of the existing circumstances and conditions. . . . An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes.' "

See, also, *Freeman* v. *Mercantile Mutual Accident Ass'n,* 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753; *Fetter* v. *Fidelity & Casualty Co.,* 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. R. 560; *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493; *Moon* v. *Order of United Commercial Trav. of America,* 96 Neb. 65, 146 N. W. 1037, Ann. Cas. 1916B, 222; *Hall* v. *General Accident Assur. Corp.,* 16 Ga. App. 66, 85 S. E. 600; *Thornton* v. *Travelers' Ins. Co.,* 116 Ga. 129, 42 S. E. 287, 94 Am. St. Rep. 99; *Continental Casualty*

*Co.* v. *Lloyd,* 165 Ind. 52, 73 N. E. 824; *Driskell* v. *United States Health & Acc. Ins. Co.,* 117 Mo. App. 362, 93 S. W. 880; *Bohaker* v. *Travelers' Ins. Co.,* 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543.

There are numbers of cases, and especially cases in the federal court, which hold to the contrary of the doctrines herein announced, but we think the authorities cited in support of this opinion adopt the true rule. It is not sufficient to defeat the policy that the accident may have made some latent disease active, which disease contributed in some degree to the death. If the disease was active and of such character and virulence as to endanger life apart from the accident, but might not have done so had the accident not happened, then that may be said to be a proximate contributing cause. The court ought not to construe a contract so as to defeat rather than promote the purpose of the party in taking out the insurance. The condition of health or the existence of latent and inactive disease evidently was not contemplated by the parties in making the contract. No medical examination was required, and the pleadings did not seek to question the answers given by the assured as to his condition of health at the time the application was signed.

Next the assignments go to the giving of the instructions for the plaintiff and the refusal of the instructions for the defendant. The instructions of the court which were given to the jury accord with our views as herein announced. The refused instructions sought to present the theory to the jury that the law was that any cause contributing to the death would bar recovery, even though it was not a proximate cause, the proximate cause hypothesis was omitted from these instructions, and for that reason they were rightfully refused.

The suggestion of error will therefore be overruled.

*Overruled.*