MUTUAL OF OMAHA INSURANCE CO. *v.*
DEPOSIT GUARANTY BANK & TRUST CO., EXR., ETC.

No. 42645          April 15, 1963          151 So. 2d 816

*Watkins & Eager,* Jackson, for appellant.

642

*John D. Kervin, Hugh McIntosh,* Collins, for appellee.

McGehee, C. J.

This is a suit by the Deposit Guaranty Bank & Trust Company, as Executor of the last will and testament of Dr. James P. Sharon, Deceased, to recover death benefits of $5,000 for his death by accident "independently and exclusively of disease and other causes," under the following provision of the insurance policy in question, to wit:

"If the Insured shall, through accidental means, sustain bodily injuries as described in the Insuring Clause, which shall, independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay:

"For Loss of Life _____ $5,000.00". And in addition $150.00 a month for the period between the date of accident and the date of death. (None of the other items listed here in the policy are involved in this case.)

Thus it will be readily seen that the death of the insured must result from bodily injuries sustained through accidental means and independently and exclusively of disease and all other causes before there can be a recovery of death benefits under the policy.

The insured, Dr. James P. Sharon, began suffering from coronary insufficiency and angina pectoris in 1949, more than ten years before his death on January 5, 1962. From February 26, 1957, through March 7, 1957,

he suffered from "arterio vascular reaction, acute severe." From February 2 to 6, 1958, he was again hospitalized with a diagnosis of "hypertensive vascular reaction, acute with coronary insufficiency, syndrome, mild"; he later suffered "a coronary occlusion", which represented "a complete insufficiency" or "a complete cut-off", whereas in 1958, the insured suffered a partial insufficiency or cut-off.

The insured was retired from the staff of the Veterans Administration in 1958 for "physical reasons", one of which was "related to his heart." Thereafter, he went to the Mississippi State Sanatorium, but was later retired from there, and then opened an office at Seminary, Mississippi, where his medical practice was not "extensive."

He was confined in the Covington County Hospital at Collins, Mississippi, from July 25 until September 2, 1960, with a myocardial infarction, due to the fact that a blood vessel to the heart became occluded or partially stopped up.

In addition to Dr. Schwartz, a specialist at Hattiesburg, the plaintiff also called as a witness, Dr. C. P. Crenshaw, a general practitioner at Collins, Mississippi, and presently the President of the Mississippi State Medical Association, and he was asked: "Dr. Sharon had a myocardial infarction, what you found was that one of the blood vessels was partially stopped up? A. Yes, sir. Q. It was occluded? A. That's right. Q. And so when Dr. Schwartz down at Hattiesburg this year (1962) put on Dr. Sharon's death certificate that 'he died from a coronary occlusion', what Dr. Schwartz was saying was that one of his blood vessels was stopped up? A. Yes, sir. Q. It was occluded? A. That's right."

From November 15 to November 21, 1960, the insured was again hospitalized at Collins with "coronary insufficiency", i. e., a "partial occlusion." The record

reflects that Dr. Sharon was paid disability benefits for these various periods of illness and hospitalization.

The insured was involved in one automobile accident near Jackson on January 25, 1961, and then later in a train-auto collision at Hattiesburg on December 31, 1961. On February 11, 1961, he suffered a "cardiac attack"; and the X-rays showed "a marked enlargement of the heart."

In February of 1961, the insured had "a failing heart", and the progressive disease of arteriosclerosis placed him "in constant danger of thrombosis." He "was in constant danger of suffering another * * * coronary occlusion. His active heart disease was * * * of the type that is likely to cause death at any time."

After his automobile-train accident, on December 31, 1961, the insured was first seen by Dr. Hightower in the Methodist Hospital at Hattiesburg, but requested that he be placed under the care of Dr. Schwartz, an internal medicine specialist, whose deposition as a witness for the plaintiff covers a large part of the record.

Dr. Schwartz signed a death certificate for Dr. Sharon showing that the cause of his death was acute coronary occlusion. And both Dr. Schwartz and Dr. Crenshaw, as witnesses for the plaintiff, conceded in their testimony that the accident suffered by Dr. Sharon was a proximate contributing cause of his death.

There were four medical witnesses who testified in the trial of this case. Doctors Schwartz and Crenshaw being introduced as witnesses for the plaintiff, and Doctors Rosenblatt and Gallogly, the latter having treated the insured since 1953, were introduced as witnesses and testified for the defendant, and all four of them agreed that the insured's heart disease was active and virulent and progressive and of a type apt to cause death at any time.

Dr. Crenshaw was asked: "Q. Well, in view of his history then, sir, would you agree with me that it is

fair to say that Dr. Sharon was in constant danger of suffering another cardiac attack? A. Coronary occlusion. Q. Coronary occlusion? A. Yes. Q. In other words, Dr. Sharon was a man that had had this heart condition for many years? A. Right. Q. It's a progressive thing and consequently another attack could occur at any time. That's true, isn't it? A. Sure.''

Dr. Schwartz said the insured had a persistent history of ''both hypertensive disease and arteriosclerosis,'' and was asked: ''Q. All right, sir. Was not Dr. Sharon in constant danger of thrombosis from arteriosclerosis? A. Yes, sir. * * * Q. You do agree that the progressive disease of arteriosclerosis in a man of Dr. Sharon's age and with his history was the type that could cause death or was apt to cause death at any time? A. He could have had death that night without the accident.''

Dr. John Gallogly, the internal medicine specialist who had treated the insured, was asked: ''Q. Did this heart disease cause the coronary occlusion? A. Yes. sir. Q. Did Dr. Sharon have arteriosclerosis? A. Yes. sir. Q. For how long? A. I would judge not less than ten years. Q. What is arteriosclerosis? A. Hardening of the arterries. Q. Is it a progressive disease? A. Yes, sir. Q. Was Dr. Sharon or not in constant danger of thrombosis from arteriosclerosis? A. Yes. sir. Q. Was his an active heart disease? A. Yes, sir. Q. Was his heart disease of the type that is likely to cause death at any time? A. Yes, sir.''

Dr. William H. Rosenblatt, a cardiologist, was asked this question: ''Was his an active heart disease? A. His was quite an active heart disease. Frankly from what I see on x-rays and electrocardiograms, I am surprised that he lived as long as he did. Q. Was his of the kind that was able to cause death at any time? A. Yes, sir. Q. Is it probable or not that Dr. Sharon could have died at any time purely and solely from his

heart condition? A. It is entirely probable that he could have died any time from his serious heart condition.''

(Hn 1) All of these expert witnesses in their medical testimony agreed that the active virulent heart disease was a proximate cause of insured's death. The two medical experts introduced by the plaintiff gave further testimony as follows: Dr. Schwartz was asked, ''But at any rate, at the time when you signed this form, it was your opinion that the injuries which Dr. Sharon had sustained in that accident were not of themselves sufficient to cause death independent of all other causes? A. That's right.'' And Dr. Crenshaw testified: ''We know that the heart condition contributed to his death, but it is my opinion that the accident contributed to it also.'' In other words, the most that the medical witnesses for the plaintiff would say was that the accident contributed to the insured's death. But it is to be noted that the insuring clause of the policy, quoted in the second paragraph of this opinion, required the insurance company to pay the death benefits only where the death occurred through ''accidental means * * * independently and exclusively of disease and all other causes''.

Therefore the proof in the case on behalf of the plaintiff was insufficient to bring this claim within the said provision of the policy.

In Cornelius on Insurance, Accidental Means, p. 112, it is said: ''* * When a company has stipulated in its policy in substance that it is not to be liable unless death results solely and independently of all other causes from a bodily injury it has stated as explicitly and unequivocally as possible that there is no liability when some other cause other than the injury is a contributing factor in bringing about death.''

In Anno., 144 A. L. R. 1416, is the following: ''Another group of cases representing the weight of authorities take the view that the burden of proof is on the plaintiff

to show not only that the injury or death was caused by accidental means but that it was not caused by a pre-existing disease or bodily infirmity, or that such disease or bodily infirmity did not proximately contribute to the injury or death or that such accidental means was the sole cause of such injury or death independently and exclusively of disease or infirmity. * * Equitable Life Assur. Soc. v. Askew, 194 Miss. 347, 11 So. 2d 441.''

**(Hn 2)** In the case of U. S. F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, this Court held in substance, if there is a latent or dormant disease which becomes active through the agency of the accident, and co-operates with the other effects of the accident in bringing about death, the insurer is liable. But if the accident is the proximate cause of the death and sets in motion or starts *a latent or dormant disease* and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy. And in the Hood case the Court said: ''If the disease was active and of such character and virulence as to endanger life apart from the accident, but might not have done so had the accident not happened, then that may be said to be a proximate contributing cause.''

The instant case does not present a situation where the heart disease of the insured was latent and dormant and then activated by an accident, but the proof is undisputed that Dr. Sharon had an active virulent and progressive heart ailment, and that therefore the Mississippi case and other cases relied upon by the appellee where the disease was latent and dormant do not apply in the instant case. See Metropolitan Life Ins. Co. v. Williams, 180 Miss. 894, 178 So. 477; Equitable Life v. Askew, supra; Standard Life Ins. Co. v. Foster, 210 Miss. 242, 49 So. 2d 391; Mutual Life Ins. Co. of N. Y.

v. Rather, 221 Miss. 527, 73 So. 2d 163; and U. S. F. & G. Co. v. Hood, supra.

We think that the trial court was in error in not granting the peremptory instruction requested by the appellant, Mutual of Omaha Insurance Company, and that the cause should therefore be reversed and a judgment rendered here for the appellant.

Reversed and judgment here for appellant.

*Kyle, Arrington, Ethridge and Gillespie, JJ.,* concur.