METROPOLITAN LIFE INS. CO. *v.* WILLIAMS.

(Division A. Jan. 31, 1938.)

[178 So. 477. No. 32944.]

896

Wells, Wells & Lipsomb and W. R. Newman, Jr., all of Jackson, for appellant.

900

**M. V. B. Miller,** of Meridian, for appellee.

Argued orally by **W. R. Newman, Jr.**, for appellant, and **M. V. B. Miller**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

On December 1, 1925, the appellant, Metropolitan Life Insurance Company, issued to Dawson W. Williams, husband of the appellee, a certificate of insurance subject to the terms and conditions of a certain group policy, issued on the same date by appellant to the Texas & Pacific Railroad Company for the benefit of certain of its railroad shop employees. This certificate and group policy were kept in full force and effect in favor of the said Williams, who paid premiums thereon monthly until his death on October 4, 1934. The insurance was made payable to the appellee as sole beneficiary, and she recovered

judgment for the amount thereof; and from that judgment this appeal is taken.

The contingency insured against, and on account of which the recovery is sought, is death from bodily injury caused directly and independently of all other causes by violent and accidental means, resulting within ninety days from the date of the accident. There are certain exceptions for which there is no liability under the policy, contained in the clauses of limitation, but none of which are important under the issues made by the pleadings, except a limitation which precludes recovery where death results from bacterial infection. However, there is expressly excepted from this limitation ''a septic infection of, and through, a visible wound accidentally sustained.'' This cause of action is predicated on the theory that the death of the insured was caused by a septic infection of such a wound.

The proof discloses that the insured was employed as a blacksmith for several years in the railroad shops of the Texas & Pacific Railroad Company, at Marshall, Tex.; that on the 25th day of July, 1934, he was carried to his work by the appellee at about 8 o'clock in the morning, and that she returned for him that afternoon when he had completed his day's work at about 4 o'clock when she first observed that the fleshy part of the palm of his hand was injured near the little finger, the injury consisting of a scratch and breaking of the skin for approximately one-half inch in length; that his hand had turned blue, and was swollen; that she immediately carried him to the railroad hospital, where his hand was dressed; that he returned to his work every day until August 2, 1934, during which time his hand was dressed each afternoon after working hours; that his hand was lanced twice on August 2d at the hospital, and he was never thereafter able to return to his work; that the injury continued to grow worse from its inception, so much so that it became necessary for the insured to enter the hospital as a regular patient on September 7th,

that on September 26th there appeared some red streaks on his arm, which extended from his hand up nearly to his elbow, with the result that his arm was then amputated; and his condition grew steadily worse until his death, a few days thereafter. It was further shown that during the time intervening from the date of the injury to the death of the insured, his hand abscessed several times, and that it was necessary for it to be lanced on numerous occasions, both in the palm and on top of the hand, and at intervals of every four or five days.

In addition to the testimony of the appellee herself as to all the foregoing facts, she introduced a Mr. McAdoo as a witness, who testified that he was operating at that time a mercantile business near the railroad shops; that on the day of the injury the insured came to his store after he had quit work in the shops that afternoon and showed the witness his injured hand; that the skin of his hand appeared to be wrinkled at the place of the wound; that blood was oozing from the wound; and that his hand was swelling and had turned blue. Both the witness McAdoo and the appellee testified that the work in which the insured was engaged was that of a blacksmith; that he handled heavy pieces of iron, such as engine axles and other materials which were hammered and beaten out with steam hammers; and that the materials so handled by the insured were held by hand with the use of tongs as the steam hammers were being operated, the reasonable inference being that these materials were handled with the hands alone before and after the use of the steam hammers thereon.

There was no direct testimony offered by the appellee as to how or by what means the insured actually received the injury to his hand; and the case was submitted to the jury to determine from the foregoing facts and circumstances (1) as to whether or not the injury was sustained by accidental means, and (2) as to whether or not the death of the insured resulted from said injury directly and independently of all other causes. No

evidence was offered by appellant on either of these issues.

Appellant contends that appellee wholly failed to meet the burden of proof imposed upon her by law to establish both of the foregoing facts; and that, therefore, appellant was entitled to a peremptory instruction. This is the sole question before us for decision.

It is conceded that the application for the insurance, together with the certificate and group policy, was delivered and the contract consummated in the state of Texas; and that the law of that state controls as to the construction of the contract of insurance here involved, while the procedure, including the remedies and rules of evidence, is governed by the law of the forum.

As to whether the injury to the insured's hand was caused by accidental means, it is not essential that such fact be proved by direct evidence; but where the fact of the injury has been clearly shown, the means by which it was caused may be proved by circumstances, including the nature and appearance of the injury itself, just as any other fact in civil or criminal cases. Garrett v. International Travelers' Ass'n, Tex. Civ. App., 14 S. W. (2d) 944, 945, 946; Continental Casualty Co. v. Daniels, Miss., 173 So. 302; Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842; Neely v. Provident Life & Accident Ins. Co., 322 Pa. 417, 185 A. 784; Martin v. Bankers' Life Co., 216 Iowa 1022, 250 N. W. 220; Caldwell v. Iowa State Traveling Men's Ass'n, 156 Iowa 327, 136 N. W. 678; 1 C. J. 495; Omberg v. United States Mutual Accident Ass'n, 101 Ky. 303, 40 S. W. 909, 72 Am. St. Rep. 413; Meadows v. Pacific Mutual Life Ins. Co., 129 Mo. 76, 31 S. W. 578, 50 Am. St. Rep. 427; Hornby v. State Life Ins. Co., 106 Neb. 575, 184 N. W. 84, 18 A. L. R. 106; Mutual Benefit Health & Accident Ass'n v. Basham, 191 Ark. 679, 87 S. W. (2d) 583, 584.

It is true that in the case of Jefferson Standard Life Ins. Co. v. Jefcoats, supra, where the direct evidence did

not disclose whether the insured met his death through accidental means or through suicide, the plaintiff was aided by the presumption against suicide. But it is equally true that the rule is well settled under numerous authorities construing insurance policies covering death by accidental means where an injury appears to have been sustained through external and violent means, the injury is presumed to have been sustained through accidental means. Federal Life Insurance Co. v. Raley, Tex. Civ. App., 81 S. W. (2d) 220; Couch on Insurance, vol. 5, par. 1140; 14 R. C. L. 1239; Cronkhite v. Travelers' Ins. Co., 75 Wis. 116, 43 N. W. 731, 17 Am. St. Rep. 184, cited in Continental Casualty Co. v. Daniels, Miss., 173 So. 302; Cornelius on Accidental Means, pp. 74, 77, and 79; Preferred Accident Ins. Co. v. Fielding, 35 Colo. 19, 83 P. 1013, 9 Ann. Cas. 916; Caldwell v. Iowa State Traveling Men's Ass'n, supra.

As to the rule of evidence and burden of proof in this state, our court in the case of Continental Casualty Co. v. Daniels, supra, upheld the verdict of the jury on the issue as to whether an injury had been sustained through accidental means where the proof only showed that for some time before the day of the injury the deceased had appeared in good health, and particularly so on his departure in the course of his employment that morning, and where he returned to his home that night suffering from a wound located near and to the rear of his right ear, and where the wound was of such character as to make it apparent that the injury was the result of external and violent means. It does not appear from the record or from the opinion in the Daniels Case that there was any direct proof as to how or by what means the deceased received the injury above referred to. We find no material distinction between the Daniels Case and the case at bar so far as the amount of proof required to show an injury to have been received by accidental means is concerned. It is not reasonable to assume that such an injury to the insured's hand could have been in-

tentionally self-inflicted, since a person intending to inflict an injury on himself would, ordinarily, have selected a more vital spot for the purpose. Moreover, according to the testimony of the witness McAdoo, the skin on the palm of the insured's hand in the present case was wrinkled at the point of injury or wound, from which the jury might reasonably infer that his hand was pinched or mashed; and it could also be reasonably inferred from all the facts and circumstances that he received the injury in performance of the duties of his employment during the day in an accidental manner, rather than that it occurred during the noon hour while he was eating his lunch. The jury was not required to know that the injury was produced by accidental means, but was only required to believe from a preponderance of all the facts and circumstances in evidence that it was so caused.

We are of the opinion that the case of United States Casualty Co. v. Malone, 126 Miss. 73, 87 So. 896, relied upon by appellant, is not decisive of the question here under consideration. In the Malone Case the insured caused his injury by voluntarily rubbing his toe with a towel, and the court expressly stated that the proof did not show that the injury was caused by an accident or through accidental means. In fact, it affirmatively appeared that there was no element of accident involved in that which produced the abrasion in Malone's toe. The abrasion was a natural and probable consequence of his voluntary act. It is true that the subsequent infection, which caused the death of Malone was unusual, unforeseen, and unexpected; but the jury was not warranted in finding that the injury from which the infection arose was caused by accidental means where all the facts were to the contrary. However, many authorities from other jurisdictions hold that even where the insured is injured while performing an act which he intended to do and in the manner intended, but where the ultimate result is infection, blood poison, and death,

the result is nevertheless occasioned by accidental means, since the result is unforeseen, unexpected, and unusual. Such has been held in cases decided by the Texas court, such as where a person intentionally punctures a pimple on the face, or caused a tooth to be extracted, followed by infection and blood poison. Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S. W. 673, 678, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517; International Travelers' Ass'n v. Bettis, Tex. Civ. App., 52 S. W. (2d) 1059, 1061; Francis v. International Travelers' Ass'n, Tex. Civ. App., 260 S. W. 938, 939; United States Mutual Acc. Ass'n. v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60.

In the Bryant Case, supra, which is the leading Texas case, the death of the insured resulted from a sunstroke while he was walking and intentionally exposing himself to the heat of the sun in the performance of his duties as collector. There the court said: "We decline to recognize as the true rule . . . that 'where an injury occurs as the direct result of intentional acts, it is not produced by accidental means;'' and, further, that "if in the act which precedes the injury, though an intentional act, something unforeseen, unexpected, and unusual occurs, which produces the injury, it is accidentally caused." In the Bettis Case, supra, the Texas court thought it was immaterial whether the breaking of the wire which injured the insured's finger was itself accidental, or whether Bettis intended to break the wire; that the result of the injury to the finger, being unforeseen, unexpected, and not intentional, clearly resulted from "external, violent and accidental means" within the express language of the policy, in either event.

Again the Texas court held in the case of Garrett v. International Travelers' Ass'n, supra, that blood poisoning was received through accidental means where the insured had a cold and rubbed his nose with his hand and handkerchief and picked and squeezed a pimple thereon with his hand until his nose was raw and chafed

as a result of the rubbing and picking that he gave it, saying: "We think the jury might have reasonably found from the evidence that insured infected his nose by rubbing and picking it with his hands and handkerchief; that the carbuncular infection resulted from an external force, . . . rather than from natural causes," and that "whether the blood poisoning from which insured died was the result of an external force, received through accidental means, or was the natural consequence of a pre-existing disease, was a question for the determination of the jury."

In the case of Lewis v. Ocean Accident & Guarantee Corporation, 224 N. Y. 18, 120 N. E. 56, 57, 7 A. L. R. 1129, Judge Cardozo, in construing a policy similar to the one here involved, said: " 'Probably it is true to say that in the strictest sense, and dealing with the region of physical nature, there is no such thing as an accident.' [Citing references.] But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man [Citing references]. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, or unlooked for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts." The rules of construction of the term "accidental means," which should govern the interpretation of contracts of this nature, are clearly stated in paragraph 2863a, vol. 5 of Joyce on the Law of Insurance (2 Ed.), at page 4952.

In those jurisdictions where the plaintiff is required to prove not only that the result of an injury was unexpected, unforeseen, and unusual, but that an element of accident existed in that which produced the injury, the rule is nevertheless recognized that the law indulges in the negative presumption that the injury was not intentionally self-inflicted; and that it was not intentionally inflicted upon the insured by another person, since

that would be a violation of the law, leaving by elimination, the only remaining, but affirmative, presumption, that where there is no evidence to the contrary an injury which appears from its character to have been inflicted by external and violent means has been caused by accidental means.

This rule is stated by Cornelius on Accidental Means, at p. 77, as follows: "The plaintiff under an accident policy containing the usual insuring clause has made out a prima facie case sufficient to go to the jury when it has been shown that the insured had a bodily injury and that such an injury was the sole cause of death, whenever the circumstances are such that the injury must necessarily have been brought about in one of three ways, namely, by being intentionally self-inflicted, by being intentionally inflicted upon the insured by another, or by accidental means not in the nature of a criminal assault."

On the question of whether or not the insured met his death as the result of a bodily injury, caused directly and independently of all other causes, by violent and accidental means, the appellee introduced Dr. T. G. Cleveland, of Meridian, Miss., who testified, in substance, under hypothetical questions as an expert, that, from the history of the case, including the subsequent developments resulting in the death of the insured, hereinbefore set forth in the testimony of the appellee, and the further fact that although the insured had suffered to some extent from diabetes for nearly three years prior to his death, he had been able to perform hard manual labor without the loss of a day's time during the two years immediately preceding the date of the injury, and that the diabetic condition had not been sufficiently serious to require the taking of insulin within a year prior to the date of his death, it was his opinion that the insured died from blood poison, otherwise known as septicemia; that septicemia is caused by virulent and septic germs entering the blood stream through a wound

or other·lesion on the skin; that septicemia is a form of toxemia, although toxemia may be due to other toxins in·the blood than those caused by infection, or septicemia; that there was nothing inconsistent in the report to the appellant made by the attending physician, and introduced in evidence by appellee, to the effect that the cause of death was "toxemia following multiple abscesses on the insured's right hand, and the amputation of his arm," when compared with the testimony of Dr. Cleveland himself to the effect that the infection of the hand at the point of injury resulted in septicemia or blood poison, a form of toxemia; that abscesses are always produced by an infection or septicemia, but not necessarily by toxemia, except to the extent that infection and septicemia are included under the broader term of toxemia; that, in other words, there may be toxemia without infection or septicemia, even though infection and septicemia are one of the many forms of toxemia.

He further testified that the fact that no insulin had been given to the insured prior to his death would indicate that the attending physician did not consider that his diabetic illness amounted to anything. It is stated in the certificate of the attending physician, furnished in connection with the proof of death, that diabetes was a contributory or secondary cause of death, and, in effect, that the duration of the cause of death, from the personal knowledge of the attending physician, was two years, by which he evidently meant that he had known of the patient's diabetic condition for a period of two years, since that which he gave as the principal cause of death had been of only a few weeks' duration at the time he gave the certificate. But Dr. Cleveland testified, in effect, that if a physician had treated this injury from its inception to the death of the insured, including the lancing of the abscesses and the amputation of the arm, with knowledge of the existence of the disease of diabetes, and had failed to administer insulin, unless the disease was of a mild form, he would be "laying down

on his job." It should not be presumed that the attending physician was guilty of negligence or want of reasonable care in his treatment of the insured, and we are of the opinion that it was a question for the jury to determine whether the death of the insured was caused directly and independently of all other causes by the injury to his hand, followed by its infection and blood poison, giving full consideration both to the testimony of Dr. Cleveland and the certificate of the attending physician. The injury to the insured's hand was not mentioned at all in the certificate; nevertheless the evidence discloses, and the jury had the right to believe from the undisputed evidence, that the attending physician knew about the injury and knew of the progress of the infection, the blood poison, which necessitated the amputation of his arm, and knew that it was the predominant and efficient proximate cause of the insured's death, when he stated in the proof of death that diabetes was the contributing or secondary cause thereof.

In the case of United States Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 119, 15 A. L. R. 605, where a policy of insurance with similar provisions was involved, this court, among other things, said:

"It appears clearly from the testimony of Dr. Gamble that the active cause of the death was the accident and that the accident precipitated the other troubles; that, had the accident not occurred, death would not have resulted for some years.

"Does the provision of the policy 'the effect resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means' mean that there can be no recovery if there is a latent or dormant disease which becomes active through the agency of the accident, and cooperates with the other effect of the accident in bringing about death?

"We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or

dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of death nor a contributing cause within the meaning of the terms of the policy.''

And the court further says:. ''There are numbers of cases, and especially cases in the federal court, which hold to the contrary of the doctrines herein announced, but we think the authorities cited in support of this opinion adopt the true rule. It is not sufficient to defeat the policy that the accident may have made some latent disease active, which disease contributed in some degree to the death. If the disease was active and of such character and virulence as to endanger life apart from the accident, but might not have done so had the accident not happened, then that may be said to be a proximate contributing cause. The court ought not to construe a contract so as to defeat rather than promote the purpose of the party in taking out the insurance.'' And our attention is not called to any cases decided by the Texas court in conflict with the rule thus announced, but as supporting this rule see McVeigh v. International Travelers Assurance Co., Tex. Civ. App., 101 S. W. (2d) 644, 649, and Garrett v. International Travelers' Association, supra.

We are of the opinion that it was a question for the jury under all the facts and circumstances to determine both the question as to whether the injury was caused by accidental means and as to whether death resulted from the injury directly and independently of all other causes; also that the appellee met the burden of proof imposed upon her by law on both of these issues.

Affirmed,