## BOULT v. MARYLAND CASUALTY CO.
### No. 9268.

Circuit Court of Appeals, Fifth Circuit.
April 19, 1940.

Landman Teller and W. J. Vollor, both of Vicksburg, Miss., for appellant.

E. L. Brunini, of Vicksburg, Miss., for appellee.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On May 16, 1916, Fidelity and Deposit Company of Maryland issued a combination sickness and accident insurance policy to Richard W. Boult of Vicksburg, Mississippi. Later the policy was assumed by Maryland Casualty Company and carried in full force by it until the death of the insured on March 7, 1938. The beneficiary, Mrs. Ida C. Boult, wife of Richard W. Boult, brought suit on the policy in the state court and alleged that her husband died as the result of an automobile accident. The cause was removed to the United States District Court and was there tried to a jury. At the conclusion of the evidence the defendant insurance company moved for a directed verdict. The motion was overruled and the case was submitted to the jury. The jury returned a verdict in favor of the plaintiff for the full amount of the policy and judgment was entered. The defendant then filed a motion for judgment notwithstanding the verdict. The motion was argued and taken under advisement by the court. Four months later the court sustained the motion, set aside the original judgment, and entered judgment for the defendant, Maryland Casualty Company. From this judgment, Mrs. Boult has appealed.

The facts surrounding the accident are not in dispute. Mr. Boult was driving his car south alóng Cherry Street in the City of Vicksburg on the afternoon of March 7, 1938. The car, a 1933 Model Ford, was in a very poor state of repair, especially in regard to the brakes and steering gear. As Mr. Boult's car approached the intersection of Jackson and Cherry Streets, a black sedan traveling west on Jackson Street entered the intersection and stopped abruptly in front of the Boult car. Mr. Boult cut sharply to the east and rear of the black sedan. He ran the car against and over the curbing on the south side of Jackson Street, and struck a heavy corrugated iron garbage can. The impact of the collision, which could be heard a block away blew out two tires and loosened the front seat of the car. The iron garbage can was crushed beneath the car and two wheels were lifted from the ground. Witnesses at the scene testified that after the accident Mr. Boult appeared to be dazed and stunned; that he got out of the car and walked to Jeffcoat's filling station a block away; and that as he walked he slumped forward. When Mr. Boult reached the filling station he fell to the ground and had to be helped inside where he asked for a drink of water. At that time one side of his face was very red and his left leg and arm were impaired. William Boult, a son, came and took his father home. Around six o'clock the doctor came and found Mr. Boult to be suffering with a cerebral hemorrhage. By seven o'clock he was unconscious and at eleven o'clock that night he died.

The appellee insurance company contends that Mr. Boult did not die as a result of the accident "independently and exclusively of disease", and points to the testimony of Mrs. Pauline Boult Dement, a daughter of insured. Mrs. Dement, who had been living in Mobile and who had not been with her father much in the eighteen months preceding his death, testified, "I knew he had high blood pressure." The appellee also calls attention to the movements and conduct of Mr. Boult prior to the accident. Around 4:30 in the afternoon Mr. Boult drove to First East Street for the purpose of going to Mr. McElligott's home to pay his "Woodmen dues." When he arrived at First East Street he parked his car behind a pile of dirt on the north side of the street and walked across and sat on the porch of Mrs. Mathews, who was out. When Mrs. Mathews came in a few min-

utes later he told her that he wanted to pay his Woodmen dues; she told him he was at the wrong house and directed him to Mr. McElligott's house two doors up the street. The houses along the street had been recently painted, and looked very much alike, and Mr. Boult went next door and sat on the steps. Mr. Katzenmeyer saw Mr. Boult sitting on his steps and came over and spoke to him. When Mr. Boult told him he was looking for Mr. McElligott he was directed to the house next door. Mr. Boult then went to Mr. McElligott's home and paid his dues. Mr. McElligott and Mr. Boult, who were old friends, discussed the insurance and talked about two mutual friends who had recently died. They carried on a general conversation and discussed, among other things, a proposed repair job to the roof of the McElligott home. Mr. Boult left McElligott's and walked down the street to his car. He started the motor and the wheels began to spin. Mr. Katzenmeyer, observing that the bumper of the car was resting against the pile of dirt, came out and told Mr. Boult to back up. Mr. Boult backed the car and started forward and hit the pile of dirt again. Then with Mr. Katzenmeyer's direction he backed again, cut his wheels sharply, and drove on his way. Mr. Katzenmeyer testified that, other than his manner of driving, Mr. Boult appeared to be normal.

Numerous witnesses testified that Mr. Boult was a poor automobile driver; that he often side-swiped cars, dented fenders, ran over curbstones, and, "If his wheels were cut toward the curb he would go right on. He would never straighten his car." In the light of this testimony the jury might conclude that Mr. Boult's conduct on First East Street was due to mistake caused by the similarity of the newly painted houses, and by his inability to properly drive an automobile.

The appellee contends that the death of the insured did not come within the coverage clause of its policy which provides: "Does Hereby Insure * * *, (1) against loss or disability as herein defined, resulting from Bodily Injury, effected solely through External, Violent and Accidental Means, independently and exclusively of disease, whether disease pre-exists or be afterward contracted, and all other causes, * * *."

Witnesses for appellant testified that Mr. Boult was in good health; that he never had a doctor except for colds and flu; and, except for his daughter who lived in Mobile, not one had heard that he had high blood pressure. For at least two months prior to his death the insured had been at work at "half past six" every morning. He was a contractor and personally supervised his work, and not long before his death he would climb daily to the top of the steeple of the Catholic Church to give orders to his men doing work there. On the day of the accident he went about his work as usual. He ate his noon meal with his family, and in the afternoon he appeared at a house that was being built under his supervision and gave instructions to his men; he was eating an ice cream cone, was jolly and in good spirits, and was able and did walk a 2x8 plank in going to the place where the men were working. Fourteen witnesses, including members of his family, testified as to his good health. Moreover, the policy of insurance had been carried continuously for twenty-two years with not one claim for sickness or accident benefits.

█ Dr. Sanderson, who first attended Mr. Boult after the accident, testified, "I think that undoubtedly the cerebral hemorrhage in this case was caused by the accident,—by the shock of the accident." Dr. Lewis gave as his opinion, "I would say that the hemorrhage took place at the time that this car hit the curb at the same time of the blow-out of the two tires." Dr. Messina thought it "most probable" that the accident caused the hemorrhage. Doctors testifying on behalf of Maryland Casualty Company were of opinion that Mr. Boult died as a result of thrombosis induced by natural causes "rather than cerebral hemorrhage." The evidence makes a case for the jury. It was the duty of the jury to weigh the conflicting evidence, and the court very properly submitted the issues to them. At the request of appellee the court charged the jury that if they found that Mr. Boult died "as a result of thrombosis or blood clot * * * then it is your sworn duty to find for the defendant." The jury found, however, that insured came to his death as the result of violent and external injury and returned a verdict for the appellee.

█ Mr. Boult was 64 years of age at the time of his death. Although the policy provided, "The insurance under this policy shall not cover any person under the age of 18 years nor over the age of 60

years", the company waived the provision and accepted premiums and kept the policy in force until the death of the insured. The insurance company knew the age of Mr. Boult, and it had the right at any time to terminate the contract. It knew further that one having reached the age of 64 years cannot withstand as much shock as younger persons. Knowing, too, that old age makes serious results of accidents more probable the company elected to accept premiums and keep the policy in force. If the insured at the age of 64 years possessed latent infirmities of which he did not know and to all intents and purposes was in good health, then if the shock of the accident caused and brought about his death the insurer, having accepted premiums, should not be permitted to escape liability. The company certainly intended a reasonable scope of insurance and whatever authority may be found to the contrary the law of Mississippi holds to this view and it is our duty to follow the law as laid down by the Supreme Court of that state.

In the case of United States Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 120, 15 A.L.R. 605, the Supreme Court of Mississippi had occasion to consider a policy of insurance with a provision similar to the one relied upon by the appellee in this case. In upholding a jury verdict the Mississippi court said, "There are numbers of cases, and especially cases in the federal court, which hold to the contrary of the doctrines herein announced, but we think the authorities cited in support of this opinion adopt the true rule." The court further announced that the rule of interpretation "of contracts of insurance of all kinds is that, in cases of doubt, that interpretation shall be given which favors the insured rather than the insurer. * * The court ought not to construe a contract so as to defeat rather than promote the purpose of the party in taking out the insurance." The Supreme Court of Mississippi as late as 1938 in the case of Metropolitan Life Ins. Co. v. Williams, 180 Miss. 894, 178 So. 477, cites with approval the opinion in the Hood case.

 The verdict of the jury should have been upheld and the court erred in setting aside the original judgment and rendering judgment for the defendant. United States Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605, Metropolitan Life Ins. Co. v. Williams, 180 Miss. 894, 178 So. 477; Continental Casualty Co.

v. Daniels, Miss., 173 So. 302; Cf. Equitable Life Assurance Society v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 82 A.L.R. 1397, annotation page 1411.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.