AMERICAN NATIONAL INSURANCE CO. *v.* CRAFT.

No. 39476 February 7, 1955 77 So. 2d 679

*Cassidy, McLain & Pigott,* McComb, for appellant.

*Breed O. Mounger,* Tylertown, for appellee.

LEE, J.

Edd Craft, the beneficiary in an insurance policy on the life of his son, R. Lamar Craft, as plaintiff, recovered a judgment against American National Insurance Company in the sum of $2,000.00, which included death benefits, both ordinary and accidental, in the sum of $1,000.00 each, and the company appealed.

The insurance company conceded its liability for the ordinary death benefit, but denied liability for the additional accident benefit. According to the provisions of the policy, the accidental benefit was payable where the

death "resulted directly and independently of all other causes, * * * from bodily injury, * * * effected solely through external, violent, and accidental means * * * evidenced by visible contusion or wound on the exterior of the body, * * *." However, it was not payable if the injury was received "(f) From engaging in any illegal occupation or committing or attempting to commit an assault or felony."

The sole question was whether or not the death was accidental; and if so, whether a recovery is excluded under paragraph (f), supra, of the policy.

The plaintiff testified that he saw his son alive about 9:00 o'clock on the evening of April 16, 1951. When he saw him again, about 3:30 or 4:00 o'clock the next morning, he was dead. There was a gunshot wound in the right chest and blood was in evidence. The body was lying across a single bed, near a window, inside Rob Lee's tavern. His son's car was parked about 12 or 15 feet from the building. Two bullet holes were in the tavern window, and one in the ventilator glass of the car. Dr. A. B. Harvey testified that the bullet entered the right side of the chest, penetrated the lung and large vessels of the heart, lodged in the spine, and, of course, was the cause of death.

After the plaintiff rested, and the court had overruled a defense motion for a peremptory, the insurance company called James Easterling as a witness. He testified that he, Lamar Craft, and Oscar Hope went to the tavern in Lamar's automobile. They drank beer and some whiskey until closing time, about 12:00 to 12:30 o'clock, when they left. In the meantime, they had seen a car, driven by Mrs. Lee, leave. They drove up the road about a mile when suddenly Lamar turned his car around, saying that he was going to see Hattie Lee Barnes, who was a colored woman, and drove back to the tavern. On the way, they met and passed another car. Upon arrival at the back of the tavern, they all got out. Lamar knocked on both

back doors and called Hattie Lee a couple of times, and also Leroy. There was no response from the inside. At Lamar's request, Hope went to the front, looked through cracks in the shutters, and returned and told them that Hattie Lee was standing by a cash register. Lamar raised the window and told Hope to go back to the front and watch, that he was going in. The witness begged him not to do so, saying that "she has probably got a gun"; but that Lamar said he was going inside and was going to have sexual relations with the woman. The witness was holding the window, and when Lamar had gotten inside the window and was sitting on the sill, shots were fired, and he fell forward, with blood spurting from his mouth. The witness and Hope ran away, went to the home of Ed McCalip, where they called a taxi; and, upon reaching McComb, they reported the occurrence to the police. The witness admitted, on cross-examination, that he, at one time, had said that he did not know why Lamar went back to the tavern. His explanation was that he did not want to tell the truth about the matter, because Lamar had a good name.

Vance Harvey testified in rebuttal for the plaintiff that Easterling had said that he did not know why Lamar went back to the tavern. However, Easterling did say that Lamar went to the back and Hope stayed at the front and that one of them was getting a bucket for the purpose of getting into the window when the shots were fired. To the same effect was the rebuttal evidence of the plaintiff, who also testified that, on one occasion, Easterling said that they went back to get merchandise; on another, that Lamar was getting a bucket at the time; and still another, that he was not killed at the tavern. The plaintiff admitted, on cross-examination, without objection, that both Oscar Hope and James Easterling testified, in the Hattie Lee Barnes murder trial, that Lamar, at the time, was going into the place to see the Negro girl.

Appellee contends that, on account of discrepancies in the testimony of Easterling, it cannot be said who killed Lamar, or why he was killed, or where he was killed; that, as against the deceased, there is the prima facie presumption of right, not wrong, doing; that since the deceased met his death through external and violent means, it must be presumed that the fatal injury was sustained through accidental means; and that the issue was properly submitted to, and decided by, the jury.

 █ It is true that both of these presumptions are recognized in this state. Orgill Brothers v. Perry, 157 Miss. 543, 128 So. 755, and Metropolitan Life Ins. Co. v. Williams, 180 Miss. 894, 178 So. 477. But the plaintiff had the burden of proving that the death was accidental; and presumptions must yield to the proof, if it is to the contrary.

The deceased met his death at the tavern. His body, the evidence of blood, and the holes from gunshots established the place of death beyond peradventure. It is true that the plaintiff testified that Easterling, at one time, said that Lamar was not killed in the tavern. Easterling denied this. However, it is incredible that he could have made such a statement in view of the physical facts. Whether the purpose, in breaking into the building, was to steal merchandise, or forcibly and against her will to have sexual relations with Hattie Lee Barnes, burglary would be thereby committed or attempted.

 █ This episode occurred late at night. The tavern was closed. Hattie Lee Barnes was in the building. She made no response when the deceased knocked on the doors and called her twice. Lamar expressed his determination to have sexual intercourse with her. In pursuance of that purpose, he forcibly raised the window and entered the building, and the shooting occurred immediately. The testimony of Easterling, to that effect, in this hearing, was supported by that of the plaintiff, who admitted, without objection, that he heard the evidence in the murder trial of Hattie Lee Barnes, and that

both Easterling and Hope, in that trial, testified that "Lamar Craft was going into that place to see the Negro girl." This admission, together with Easterling's testimony, was sufficient to, and did clearly, establish why Lamar was killed. Citizens Bank of Hattiesburg v. Miller, 194 Miss. 557, 11 So. 2d 457; 20 Am. Jur., Evidence, Sec. 1185, p. 1036. The reason was obvious: To prevent the commission of burglary, which is a felony. Sec. 2043, Code of 1942; Thames v. State, (Miss.) 73 So. 2d 134. See also Sec. 2017, Code of 1942, as to attempts; Stokes v. State, 92 Miss. 415, 46 So. 627.

Hattie Lee Barnes was the only person seen in the tavern at the time; and if she, under the circumstances, killed the deceased, his death was not accidental within the meaning of the accidental death clause in this policy. In addition, because of his criminal conduct, the benefit was expressly excluded. The imminent danger of a great personal injury to Hattie Lee Barnes afforded justification for her to fire the fatal shot. Section 2218, Code of 1942.

In New York Life Ins. Co. v. Wood, 182 Miss. 233, 180 So. 819, it was said that "accidental," as used in policies of this character, "means undesigned, unintended, unexpected, and unpremeditated." In Penn Mutual Life Ins. Co. v. Nunnery, 176 Miss. 197, 167 So. 416, the double indemnity benefit was not payable, if death resulted directly or indirectly from committing a felony. Mrs. Nunnery killed her husband, a policy holder, under such circumstances as to warrant a finding that it was done in necessary self-defense. The Court said: "If she killed him in self-defense, specifically if she killed him in order to defend herself from an unprovoked deadly attack made by him or her, then his death was not accidental within the meaning of this clause of the policy." Compare Lavender v. Volunteer State Life Ins. Co., 171 Miss. 169, 157 So. 101, where the double indemnity provision did not cover "death resulting from any violation of the law." Lavender assaulted Hamilton, and, in the en-

suing fight, received an injury from which he died. The Court held that there could be no recovery of this benefit, because the death resulted from a violation of the law.

Consequently, the peremptory requested by the defendant at the close of the case should have been sustained. Hence the judgment of the trial court for $1,000 on account of the ordinary death benefit must be, and is, affirmed; but the judgment for $1,000 on account of the accidental death benefit is reversed, and a judgment in that particular is rendered here for the appellant. Costs to be paid by the appellee.

Affirmed in part, and in part reversed and judgment here for the appellant.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.