333 So.2d 629 (1976)
Mrs. Veda T. BRITT
v.
ALL AMERICAN ASSURANCE COMPANY OF LOUISIANA.
No. 48649.
Supreme Court of Mississippi.
May 4, 1976.
*630 Bryan, Nelson, Allen & Schroeder, Gulfport, Emmett R. Cox, J.F. Janecky, Mobile, for appellant.
Aultman, Pope, Aultman, Van Slyke & Tyner, Jon Mark Weathers, Hattiesburg, for appellee.
Before GILLESPIE, ROBERTSON and LEE, JJ.
LEE, Justice:
This is an appeal by Mrs. Veda T. Britt from a jury verdict and judgment entered thereon by the Circuit Court of Pearl River County, Mississippi, in favor of All American Assurance Company of Louisiana.
On September 17, 1956, appellee issued an insurance policy in the face amount of ten thousand dollars ($10,000.00) on Solon W. Britt, Jr., the deceased husband of appellant, which policy also had a double indemnity provision for accidental death. Appellant was beneficiary in the policy, and upon the death of Britt, appellee paid the face amount of ten thousand dollars ($10,000.00), declined to pay the ten thousand dollars ($10,000.00) under the accidental death clause, and this suit was brought to recover same.
The facts are largely without dispute. Britt lived in Picayune, Mississippi, and was under treatment of Dr. James Henry, a psychiatrist in New Orleans. He had a drinking problem and was treated for same at DePaul Hospital during January, 1971, and at Mississippi State Hospital, Whitfield, Mississippi, about the middle of 1971, On Friday, December 17, 1971, Britt left Picayune for a 1:00 P.M. appointment with the doctor in New Orleans. His wife assumed that he traveled by bus since the car was in the garage. When she returned home from work at 6:30 P.M. her husband was not there, and when he had not returned by the next morning, she notified the police. About noon the following Monday, she learned that her husband had been found in a ditch of water near Slidell, Louisiana.
Britt saw Dr. Henry at 1:00 P.M. on December 17, and was examined by the doctor for forty-five minutes to an hour. At the trial, Dr. Henry testified that Britt was logical and coherent when he examined him.
Britt's whereabouts were unaccounted for from the time he left Dr. Henry's office until about 6:00 P.M. on that date when he was seen by Bryce Haynes at Jerry's Bar, Pearl River, Louisiana, about fifteen (15) miles south of Picayune. He attempted to drive off in Haynes' car, but Haynes stopped him by pulling the keys out of the ignition. Haynes testified that Britt seemed normal, that he did not appear to be under the influence of alcohol, and that there was nothing unusual about the way he was dressed. Britt apologized to Haynes about the car incident and then walked past the front of Jerry's Bar onto the highway. This was the last time he was seen until he was found in a hole of water on the following Monday morning approximately one and one-half (1 1/2) miles from Jerry's Bar.
About 7:45 A.M. on Monday, December 20, Jesse McClain, an employee of Tropical Radio Station, came to work and his attention was attracted by his dog's barking and rearing up on the fence at the back of the station. He went to the dog and saw Britt lying in a hole of water about fifty (50) feet away. It was raining at the time and Britt's eyes were open and staring; he had a black oily substance on him; he was dressed in dark grey pants, had on cowboy boots, but was not wearing a shirt. A T-shirt, which appeared to be soaked in an oily substance, was by his side. He could only mumble words which sounded like "Help me." He appeared to have an oily black substance on his body and red ants were crawling over him. McClain moved Britt's head out of the water to prevent him from drowning, and notified the police. He lay in that position until about *631 10:00 A.M. when the police arrived, and he was taken to New Orleans Charity Hospital about 11:00. Appellant obtained his transfer from Charity Hospital to Ochsner's foundation. He died at 8:00 P.M. on December 21, and the cause of his death was exposure.
The accidental death benefits provision of the policy is as follows:
"The Company will pay to the beneficiary an additional amount of Ten Thousand Dollars upon receipt at its Home Office of due proof (1) that the Insured's death resulted directly from bodily injury caused solely by external, violent, and accidental means and independently of all other causes, ..."
Appellant first contends that the trial court erred in refusing to direct the jury to return a verdict in her favor since Britt's death resulted from external, violent means, and that a presumption arises such injury was sustained through accidental means.
We are of the opinion that death from exposure is death resulting from bodily injury caused by external and violent means under the accidental death provision of the policy.
In Metropolitan Life Insurance Co. v. Main, 383 F.2d 952 (C.A.5th 1967), the Court said:
"A cause which has an external source or origin is not rendered internal by the fact that its effect is internal. Hence, if the means which causes the death of an insured comes from outside his body, it is external, although it acts internally to cause such death." 383 F.2d at 959.
44 Am.Jur.2d Insurance § 1220, at 66 (1969), defines "external" and "violent" as follows:
"In order to constitute a death or injury as one which is produced by `external' means, it is not necessary that the external means should itself cause such death or injury; it is only necessary that the cause of death shall be external to the person although it acts internally. `Violent' refers to some act not occurring in the ordinary run of things and may be fulfilled by any force whatsoever, however slight."
Also, 45 C.J.S. Insurance § 754, at 784 (1946), defines the terms:
"The words `external, violent, and accidental means' refer to the cause of the injury and not the injury itself, and any injury which is caused by means coming from outside the body of the insured is within such a provision.
The term `violent,' in such provision, signifies merely that a physical force, however slight, is efficient in producing the injury."
Appellant says that since Britt's death resulted from external, violent means, there is a presumption that such means and death resulted from accidental means.
In Taylor v. Insurance Company of North America, 263 So.2d 749 (Miss. 1972), we said:
"It is true that where an injury causing death appears to have been sustained through external and violent means, a presumption arises that such injury was sustained through accidental means. American National Insurance Company v. Craft, 222 Miss. 847, 77 So.2d 679 (1955); Metropolitan Life Insurance Co. v. Williams, 180 Miss. 894, 178 So. 477 (1938); Continental Casualty Company v. Daniels, 173 So. 302 (Miss. 1937); Continental Casualty Company v. Meadows, 242 Ala. 476, 7 So.2d 29 (1942).
Although it is sometimes said that the burden of proof shifts to the defendant, strictly speaking, the burden of proof never shifts to the defendant. Where a plaintiff has made out a prima facie case of `accidental death' the defendant is then required to go forward with the proof to show that the prima facie testimony *632 of an accident is not the true facts." 263 So.2d at 751.
In Metropolitan Life Insurance Company v. Williams, 180 Miss. 894, 178 So. 477 (1938), this Court said:
"[T]he rule is well settled under numerous authorities construing insurance policies covering death by accidental means where an injury appears to have been sustained through external and violent means, the injury is presumed to have been sustained through accidental means... ." 180 Miss. at 909, 178 So. at 479.
While it is true that when death occurs through violent, external means the presumption arises that it also occurred through accidental means, because of the peculiar circumstances of this case, the evidence and inferences flowing therefrom constitute an issue for the jury to determine under proper instructions.
Appellant next contends that the trial court erred in refusing her requested Instructions Nos. 1 and 6, and in granting Instructions Nos. 3, 4, 5 and 6 for appellee.
We are of the opinion that the trial court committed error in refusing and granting instructions, and that the case must be reversed and remanded for a new trial.
The last five lines of Instruction No. 1 [Appendix I] present to the jury the real issue in this particular case, and it was error to refuse the instruction.
44 Am.Jur.2d Insurance § 1219, at 64, and § 1220, at 65 (1969) discuss the significance of "accident" and "accidental:"
"The words, `accident' and `accidental' have never acquired any technical signification of law, and when used in an insurance contract are to be construed and considered according to the ordinary understanding and common usage and speech of people generally. The definitions of these words in insurance cases have been many and varied in form. In substance, however, the courts are practically agreed that the words `accident' and `accidental' mean that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen. The definition that has usually been adopted by the courts is that an accident is an event that takes place without one's foresight or expectation  an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." 44 Am.Jur.2d at 64-65.
"`Accidental means,' as used in an insurance policy, signifies a happening by chance and without intention or design, which happening is unforeseen, unexpected, and unusual at the time it occurs. While there is a distinct difference of opinion as to the exact scope of the term `accidental means,' the authorities are agreed that where the death or injury is caused by some act of the deceased or insured not designed by him, or not intentionally done by him, it is death or injury by accidental means... ." 44 Am.Jur.2d at 66-67.
The Instruction No. 6 [Appendix II] contains a correct statement of the law, but it is embodied in appellant's requested Instruction No. 1, and had No. 1 been granted, refusal of No. 6 would have been proper.
Appellee's Instruction No. 3 [Appendix III] required appellant to prove by a preponderance of the evidence that Britt's death resulted directly from bodily injury caused solely by external, violent and accidental means. Appellant was entitled to a peremptory instruction that Britt's death resulted from external, violent means, and it was erroneous to grant this instruction and to refuse appellant's requested Instruction No. 1.
*633 Instruction No. 4 [Appendix IV] granted to appellee is erroneous like No. 3 for the reason that it required the plaintiff to prove how the injury occurred and that it was accidental, and Instruction No. 5 [Appendix V] is erroneous for the same reason.
There is no evidence, nor inference therefrom, that Britt voluntarily exposed himself to the elements, and Instruction No. 8 [Appendix VI] is erroneous, although on a retrial of the case it may be a proper instruction.
It is not necessary to pass upon appellant's third assigned error, that the verdict of the jury is contrary to the weight of the evidence, since the case must be reversed and remanded for errors in the instructions.
Appellant assigns as Error No. 4 that the trial court erred in striking a portion of the hospital records, which appears in Appendix VII.
Mississippi Code Annotated § 41-9-61 (1972) defines "hospital records" as "without restriction, those medical histories, records, reports, summaries, diagnoses and prognoses, records of treatment and medication ordered and given, notes, entries, X-rays, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to the patients admitted to hospitals or receiving emergency room or out-patient care"
Section 41-9-111, Mississippi Code Annotated (1972), provides that the copy of the record be admissible in evidence to the same extent as though the original were offered and the custodian had been present and testified to the matter stated in the affidavit.
In City of Bay St. Louis v. Johnston, 222 So.2d 841 (Miss. 1969), in holding that the hospital records were properly admitted into evidence, the Court said:
"We think the findings and conclusions, particularly with reference to diagnoses and prognoses, would constitute a part of the hospital record, and this Court having held that the record, which the law requires to be kept shall be admissible, the law makes all the data, which the Legislature says constitutes the record, admissible." 222 So.2d at 847.
However, we are of the opinion that here the trial court was correct in striking the objectionable part of the hospital record. That entry goes far beyond a proper medical history taken upon the admission of a patient to the hospital. It is vague, speculative, without basis, does not indicate from whom the information was received, and a part of same is contrary to positive testimony introduced by the appellant. If any statement or entry is admissible under the guise of a medical history, conceivably a patient could, with some cooperation, prove his entire case by hospital records. In so holding, we do not place restriction upon proper medical histories, records, reports, summaries, diagnoses and prognoses, and records of treatment as set forth in Mississippi Code Annotated § 41-9-61(b) (1972).
Appellant lastly contends that the trial court erred in refusing to admit into evidence certain portions of the deposition of Dr. James W. Henry, and in striking certain portions of that deposition.
The trial court sustained objections to hypothetical questions asked Dr. Henry by appellant, and we are of the opinion that the objections were properly sustained. The questions were vague and confusing and did not properly set forth the facts upon which the questions were based. Dr. Henry stated in his answer to the principal question that he was not sure what appellant was asking him, and the answer was not responsive to the hypothetical question.
*634 Appellant offered in evidence a part of Dr. Henry's deposition on cross-examination when appellee declined to offer same into evidence.
The court should have permitted the introduction of all or any part of the deposition by either party, except for specific objection to the competency thereof.
"Depositions taken, certified, and returned in pursuance of law shall be admissible as evidence in the cause. ... The introduction in evidence of the deposition, or any part thereof, for any purpose other than that of contradicting or impeaching the deponent shall make the deponent the witness of the party introducing the deposition... ." (Emphasis added) Miss. Code Ann. § 13-1-47 (1972).
For the reasons stated, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.

APPENDIX I

"INSTRUCTION NO. 1 FOR PLAINTIFF
The Court instructs the jury for the Plaintiff that the decedent, Solon W. Britt, Jr., died as a result of exposure, and you are instructed as a matter of law that such death by exposure was death resulting directly from a bodily injury, caused solely by external and violent means, and if you further find from a preponderance of the evidence that such exposure was accidental in that it was undesigned, unintended, unexpected and unpremeditated, then it would be your sworn duty to return a verdict for the Plaintiff." (Emphasis added)

APPENDIX II

"INSTRUCTION NO. 6 FOR PLAINTIFF
The Court instructs the jury for the Plaintiff that death caused by exposure is death caused by `external' means."

APPENDIX III

"INSTRUCTION TO THE JURY NO. 3 DEFENDANT
The Court instructs the Jury for the Defendant that the Plaintiff has the burden of proving to you by a preponderance of the evidence that the insured, Solon Wilson Britt, Jr.'s death resulted directly from bodily injury caused solely by external, violent, and accidental means and independently of all other causes, and unless the Plaintiff has so proved to you by a preponderance of the evidence that the insured met his death as above stated, then it is your sworn duty to return a verdict for the Defendant."

APPENDIX IV

"INSTRUCTION TO THE JURY NO. 4 DEFENDANT
The Court instructs the jury for the Defendant that the Plaintiff has the burden of proving to you by a preponderance of the evidence that the insured, Solon Wilson Britt, Jr.'s death resulted directly from bodily injury caused solely by external, violent and accidental means and independently of all other causes, and further, Plaintiff must show by affirmative proof as to how the injury occurred and that such injury was accidental and caused through accidental means; therefore, unless the Plaintiff has so proved to you by a preponderance of the evidence that the insured met his death as above stated, then it is your sworn duty to return a verdict for the Defendant."

*635 APPENDIX V

"INSTRUCTION TO THE JURY NO. 5 DEFENDANT
The Court instructs the jury for the Defendant that the term `accidental means', as used in the policy of insurance on which the above styled and numbered cause is founded, does not insure against death or injury by accident or as an accidental result in that death or injury is not incurred by `accidental means' merely because the effect or result is accidental in the sense that it is unforeseen, undesigned, unusual, unexpected, unintended and unpremeditated; and the Court further instructs you that the term `accidental means' refers to the occurrence or happening which produces the results and not to the results; and, therefore, in meeting the burden of proof in this case, it is not sufficient for the plaintiff to merely show to you that the deceased, Solon Wilson Britt, Jr., may have died as a result of an unforeseen, undesigned, unexpected, unintended, unusual and unpremeditated occurrence, but plaintiff must show by affirmative proof as to how the injury or occurrence happened and that such injury or occurrence was accidental and caused through accidental means; and, therefore, if Plaintiff fails to meet his burden of proof, then it is your sworn duty to return a verdict for the Defendant."

APPENDIX VI

"INSTRUCTION TO THE JURY NO. 8, DEFENDANT
The Court instructs the Jury for the Defendant that if you believe from a preponderance of the evidence that deceased, Solon Wilson Britt, Jr., voluntarily exposed himself to the elements and as a result thereof met his death, then under the terms and provisions of the policy of insurance the plaintiff is not entitled to recover at your hands."

APPENDIX VIII
"(The family reported that he had not been allowed to have any large sums of money because of his propensity to spend this on liquor.) His exact movements are not very clear but it is probable that he was at several local bars on the morning of Saturday, the 18th, was robbed and thrown into a ditch in the Slidell area. The exact time of this is not certain  probably Saturday night, December 18, but also possibly Sunday night December 19  at any rate the weather was moderately cool on the night of December 18, quite cold the night of December 19 but not freezing, maybe about 45 or 50° . The patient was found semiconscious with only a rather light jacket on."