Connie R. KING, Individually and as Adult Next Friend of C.K.; Aubert H. King, Individually and as Adult Next Friend of C.K., Plaintiffs–Appellants,

v.

FREEDOM LIFE INSURANCE COMPANY OF AMERICA; Mary E. Wilson, Defendants–Appellees.

No. 11–60862

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 2012.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

478

Victor Arnell Dubose, Orvis Alvester Shiyou, Jr., Esq., Shiyou Law Firm, Hattiesburg, MS, for Plaintiffs–Appellants.

Neville Henry Boschert, Jones Walker, Jackson, MS, for Freedom Life Insurance Company of America.

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM: *

Connie and Aubert King, individually and as next friends of their son C.K., appeal the district court's grant of summary judgment in favor of Freedom Life Insurance Company of America (Freedom Life). We affirm.

## I

Connie King purchased a health insurance policy from Freedom Life, which issued in 2000. The policy covered Connie, her husband Aubert, and their three children. In 2007, the Kings' seventeen-year-old son, C.K., was severely injured in a single-vehicle accident. A police report indicates that the accident occurred when C.K. attempted to overtake a slower moving vehicle. In doing so, C.K. drove his vehicle off of the left side of the road and oversteered in response. As a result, his vehicle rolled over several times and came to rest off of the right side of the road. The police report reflects a witness's statement that C.K.'s vehicle was traveling in excess of 100 miles per hour immediately prior to the accident. Medical records

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

from the hospital where C.K. was treated indicate that he had a blood-alcohol level of 176.9 mg/dL, which equates to an blood alcohol concentration (BAC) of 0.1769%.[1] In Mississippi, the legal limit is 0.08% for those over twenty-one years of age and 0.02% for those under twenty-one years of age.[2] The medical records also show that C.K. tested positive for benzodiazepines and cannabinoids.

The Freedom Life policy purchased by the Kings excludes coverage of a "loss caused or contributed to by a Covered Insured's being intoxicated or under the influence of any narcotic, unless administered on the advice of a Provider" and "any loss to which a contributing cause was the Covered Insureds [sic] being engaged in an illegal occupation or illegal activity." In order to determine whether the policy covered the charges resulting from the automobile accident, Freedom Life requested copies of C.K's medical records as well as the police report. After reviewing these documents, Freedom Life sent the information to the Medical Review Institute of America (MRIoA) for evaluation. The physician who reviewed the information and authored the MRIoA report concluded that C.K.'s BAC "would have resulted in a lack of motor skills and impaired his ability to operate a motor vehicle" and "could have caused or contributed to his motor vehicle accident on 7/25/07 because of impaired judgment and ability to operate a vehicle." The physician also indicated that the "high levels of benzodiazepines and cannabinoids" in C.K.'s blood "can aggravate the effects of alcohol." As a result of its inquiry and the MRIoA report, Freedom Life denied coverage based on the intoxicating-substance and illegal-activity policy exclusions.

The Kings responded by filing suit in Mississippi state court. Freedom Life removed the case to the United States District Court for the Southern District of Mississippi. Eventually, Freedom Life filed a motion for summary judgment, which the district court granted. The district court determined that C.K.'s medical expenses were excluded from coverage pursuant to the intoxicating-substance and illegal-activity policy exclusions and therefore Freedom Life did not breach the policy. The Kings argued that Freedom Life either waived its right to deny coverage or was estopped from doing so because it paid expenses from this accident as well as prior excludable losses, but the district court determined that these arguments were without merit because, according to Mississippi law, waiver and estoppel "may not operate to create coverage or expand existing coverage to risks which, by the terms of the policy, are expressly excluded."[3] The district court also concluded that the rest of the Kings' claims were without merit. Following the grant of summary judgment, the Kings filed the present appeal.

## II

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court.[4] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

1. See MISS. CODE ANN. § 63–11–30(1) (2011).

2. MISS. CODE ANN. §§ 63–11–30(1), 67–1–81(1) (2011).

3. Stewart v. Gulf Guar. Life Ins. Co., 846 So.2d 192, 202 (Miss.2002) (citing Pace v. Fin. Sec. Life of Miss., 608 So.2d 1135, 1140 (Miss. 1992)).

4. Hill v. Carroll Cnty., Miss., 587 F.3d 230, 233 (5th Cir.2009) (citing Mack v. City of Abilene, 461 F.3d 547, 555 (5th Cir.2006)).

movant is entitled to judgment as a matter of law." [5] "We view the evidence and draw reasonable inferences in the light most favorable to the non-movant." [6] We apply the substantive law of Mississippi because our jurisdiction is based on diversity of citizenship.[7]

## A

■ The Kings argue that Freedom Life's denial of coverage constituted a breach of the implied covenant of good faith and fair dealing and that summary judgment was inappropriate. The Kings base this argument on payments that they assert Freedom Life made. First, the Kings assert that Freedom Life paid some of C.K.'s medical expenses related to the current automobile accident before and after issuing a denial letter and invoking the exclusions. Second, the Kings assert that Freedom Life previously paid C.K.'s medical expenses related to a suicide attempt and a drug-related incident despite the fact that policy exclusions applied to those expenses.

According to the Supreme Court of Mississippi:

> In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.[8]

The Kings do not argue that the policy exclusions do not apply to their son's auto-

mobile accident, and therefore it is undisputed that Freedom Life had a legitimate basis to deny the claims arising from the accident. Furthermore, even if Freedom Life made the payments on which the Kings' argument relies, the Kings fail to show how Freedom Life's payment of claims that it could have denied based on policy exclusions rises to the level of "a wilful or malicious wrong" or "gross and reckless disregard" for the Kings' rights. Accordingly, summary judgment was appropriate on this claim.

## B

■ Although the Kings do not challenge the applicability of the policy exclusions, they do argue that Freedom Life either waived, or should be estopped from denying coverage based upon, the exclusions. The Kings base this argument upon the same payments discussed above.

In *Employers Fire Insurance Co. v. Speed*, the Supreme Court of Mississippi explained the limitations on the extent to which waiver and estoppel can be applied in the context of insurance policies:

> This Court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may

---

5. FED.R.CIV.P. 56(a).

6. *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir.2011) (citing *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 696 (5th Cir.2010)).

7. *Patrick v. Wal–Mart, Inc.*, 681 F.3d 614, 617 (5th Cir.2012) (citing *Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co.*, 638 F.3d 476, 478 (5th Cir.2011)); *see* 28 U.S.C. § 1332.

8. *Liberty Mut. Ins. Co. v. McKneely*, 862 So.2d 530, 533 (Miss.2003) (en banc).

be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.[9]

Because it is undisputed that the policy exclusions applied to C.K.'s automobile accident, and because application of the doctrines of waiver or estoppel would change the terms of the policy so as to bring within coverage a loss or risk that was expressly excluded, the district court properly applied Mississippi law in concluding that the Kings' waiver and estoppel arguments were without merit. The Kings have not cited a precedential decision that would alter this conclusion. This is not a case in which the insurer issued or renewed a policy knowing that the insured was, or would for certain in the near future be, in violation of a policy provision,[10] and

the Kings fail to cite any case in which waiver or estoppel is invoked based upon an insurer making a payment that it could have denied based on a policy exclusion.

## C

■ The Kings also assert that the issue of Freedom Life's liability for the alleged negligence of its agent, Mary Wilson, in failing to mention the policy exclusions when she sold the policy should have been left for the jury to decide at trial. Summary judgment was appropriate on this claim because the Kings could have learned of the exclusions by simply reading their policy.[11] Furthermore, this claim is barred by Mississippi's three-year statute of limitations.[12] The policy was sold and issued in 2000, but the present lawsuit was not filed until 2009. Because the plain

---

9. *Emp'rs Fire Ins. Co. v. Speed,* 242 Miss. 341, 133 So.2d 627, 629 (1961).

10. *See Larr v. Minn. Mut. Life Ins. Co.,* 924 F.2d 65, 66 (5th Cir.1991) (concluding that the insurer waived its right to terminate the policy pursuant to an age-termination provision because the insurer had constructive knowledge of the insured's age during the application process and when it accepted premium payments); *Boult v. Md. Cas. Co.,* 111 F.2d 257, 259–60 (5th Cir.1940) (concluding that an age-termination provision was waived because the insurer accepted premiums and kept the policy in force despite knowing of the insured's age and its right to terminate the contract at any time); *Minn. Mut. Life Ins. Co. v. Larr,* 567 So.2d 239, 241–42 (Miss. 1990) (answering the certified question of whether *Boult* had been overruled by *Speed* in the negative because "*Boult* involves a set of facts which distinguishes it from *Speed* and its progeny," and stating that "*Boult* ... is still viable precedent for the notion that under certain circumstances, an insurance company may waive an age termination provision in a policy by continuing to accept premiums past the time specified in the termination provision," especially "if the insurer had knowledge of the insured's age while continuing to accept premiums"); *Travelers Fire Ins. Co. v. Bank of New Albany,* 244 Miss. 788, 146 So.2d 351, 353–54 (1962) (applying the following rule in holding that the insurer "waived the vacancy or unoccupancy and increased hazard clauses": "If an insurance company has knowledge through its agent, when the contract of insurance is effected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to vacancy or unoccupancy, so far as concerns the existing vacancy, either where there is an agreement with the agent that the property will be insured, or evidence of a reasonable expectation by the insured through his agent that the premises are to remain vacant beyond the period permitted by the vacancy or unoccupancy clause").

11. *See Robichaux v. Nationwide Mut. Fire Ins. Co.,* 81 So.3d 1030, 1040–41 (Miss.2011) (affirming the grant of summary judgment in favor of an insurance company on a claim that the insurance agent misrepresented that the Robichauxes had full and comprehensive coverage because "the policy at issue clearly excludes storm surge" and because Mississippi law charges the insured with the knowledge of the terms in his policy).

12. *See* Miss.Code Ann. § 15–1–49 (2011).

language of the policy would have put the Kings on notice of the existence of the exclusions, the Kings' claim accrued on the date of the sale and expired in 2003.[13]

### D

We also conclude that none of the Kings' other arguments warrant reversal. First, the Kings claim that C.K. "did not have the legal capacity to 'contract away'" his coverage because he was a seventeen-year-old minor at the time of the accident is plainly without merit because Connie King contracted with Freedom Life, not C.K. Second, the Kings argue that the district court granted summary judgment based on inadmissible hearsay,[14] but they did not raise this issue before the district court, so we will not consider it on appeal.[15] Third, although in their reply brief the Kings respond to Freedom Life's assertion that the exclusions were consistent with Mississippi public policy, we need not address this issue because the Kings did not raise it in their opening brief.[16] Finally, we need not address the district court's denial of the Kings' motion to compel discovery responses because even if the motion to compel were granted and documents were produced reflecting the payments that the Kings allege Freedom Life made, based on the above analysis of the significance of those payments, Freedom Life would still be entitled to summary judgment.

\* \* \*

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

**13.** *See Weathers v. Metro. Life Ins. Co.,* 14 So.3d 688, 693 (Miss.2009) (en banc) ("[I]f an insured is put on notice by the plain language of the policy that the agent's verbal representations are false, a fraud claim accrues on the date of the sale.... On the other hand, if the plain language of the policy does not clearly contradict the agent's representations such that the insured is put on notice, a fraud claim accrues when the insured becomes aware of the misrepresentation.").

**14.** *See* Fed.R.Civ.P. 56(c).

**15.** *See, e.g., Celanese Corp. v. Martin K. Eby Constr. Co.,* 620 F.3d 529, 531 (5th Cir.2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.").

**16.** *See United States v. Delgado,* 672 F.3d 320, 329 n. 6 (5th Cir.2012) (en banc) ("We have no obligation to address—much less ferret out—errors not presented in an appellant's opening brief, and as a general matter, such matters are forfeited."); *see also* Fed. R.App. P. 28(a)(9).